28 So.3d 800 (2009)
Timothy Charles BARNES
v.
Brenda Bonham BARNES.
2080278.
Court of Civil Appeals of Alabama.
July 17, 2009.
Dale Rouse Waid, Clanton, for appellant.
Brenda Bonham Barnes, pro se.
MOORE, Judge.
Timothy Charles Barnes ("the former husband") appeals from a judgment of the Chilton Circuit Court that, among other things, directed the former husband to, within 120 days from the date of the entry of the judgment, take all steps necessary to have Brenda Bonham Barnes's name removed from all debt associated with the parties' former marital residence.
The husband and Brenda Bonham Barnes ("the former wife") were divorced by a judgment entered by the Chilton Circuit Court on June 21, 2006, as amended on July 28, 2006. The July 28, 2006, amended divorce judgment provided, in pertinent part:
"8. The [former h]usband shall have sole and exclusive ownership, use, and possession of the [former marital residence]. The [former w]ife shall execute a quit claim deed in favor of the [former h]usband upon presentment of same. The [former h]usband shall be solely liable for the mortgages secured by the [former marital residence], thereby indemnifying and holding the [former w]ife harmless for same. The [former *801 w]ife shall execute all documents presented to her by the [former h]usband or his agent relating to any refinancing on the [former marital residence] necessary to fulfill the [former h]usband's obligations to the [former w]ife."
On January 10, 2008, the former wife filed a "petition for contempt/rule nisi and/or modification" requesting, among other things, that the former husband be ordered to appear and show cause why he should not be found in contempt of court for his failure to comply with certain provisions of the amended divorce judgment. Specifically, the former wife alleged that the former husband had not refinanced the mortgages on the marital residence solely in his name. On February 7, 2008, the former husband filed an answer to the former wife's petition in which he, among other things, denied that the amended divorce judgment required him to have the mortgages secured by the marital residence refinanced to remove the former wife's name from the same.
The case was called for trial on May 16, 2008; however, the trial court entered an order on the case-action-summary sheet, which states: "Case called. Parties present with counsel.... [The former husband] to go attempt and bring documentation of refinance attempt.... Case reset for July 7, 2008 @ 9:00." The case was subsequently reset for October 6, 2008. On that date, the trial court entered the following judgment:
"Case called.... Issue of [the former husband] and the refinance of the [former] marital residence argued.... Consistent with the obligation of holding [the former] wife harmless on the debt of marital residence and spirit of [the former] husband refinancing marital residence, the [former] husband shall have 120 days in which to get all debt out of [the former wife's] name associated with [the former marital residence]."
The former husband filed a motion to alter, amend, or vacate the judgment asserting that the trial court had lost jurisdiction to modify the terms of the amended divorce judgment 30 days after its entry and that, accordingly, the trial court's October 6, 2008, judgment directing the former husband to refinance the mortgages within 120 days was an impermissible modification of the amended divorce judgment. The former wife filed a response to the motion on October 14, 2008. Following oral argument on November 17, 2008, the trial court entered an order denying the former husband's motion to alter, amend, or vacate. The former husband filed his notice of appeal to this court on December 17, 2008.
The former husband argues that the trial court erred by modifying the property-settlement provisions of the parties' amended divorce judgment because, he says, the trial court lost jurisdiction to modify the amended divorce judgment 30 days after it was entered on July 28, 2008.
"A trial court loses jurisdiction to modify a property division in a divorce judgment 30 days after the entry of the judgment. Hocutt v. Hocutt, 491 So.2d 247, 248 (Ala.Civ.App.1986). This court has held, however, that if the provisions of a property settlement are vague or ambiguous, a judgment interpreting or clarifying the property settlement does not constitute a modification of the property settlement. Williams v. Williams, 591 So.2d 879, 880 (Ala.Civ.App.1991); see also Granger v. Granger, 804 So.2d 217, 219 (Ala.Civ.App.2001); Grayson v. Grayson, 628 So.2d 918 (Ala.Civ.App. 1993). Further, a trial court has the inherent power to interpret, clarify, and enforce its orders and judgments. Granger v. Granger, supra; Patterson *802 v. Patterson, 518 So.2d 739, 742 (Ala.Civ. App.1987)."
Dunn v. Dunn, 12 So.3d 704, 709 (Ala.Civ. App.2008).
Although Alabama courts have not decided the specific question whether ordering a party to refinance a mortgage is an impermissible modification of a divorce judgment or whether it can be a means of enforcing a provision in a divorce judgment that requires that party to hold the other party harmless from that debt, the Superior Court of New Jersey addressed this issue in Eaton v. Grau, 368 N.J.Super. 215, 845 A.2d 707 (App.Div.2004). In Eaton, Cynthia Eaton sought an order requiring Justin G. Grau to refinance the mortgage on the parties' former marital home. The parties had been divorced by a January 31, 2000, judgment that had incorporated the parties' settlement agreement. According to the court in Eaton:
"The [settlement agreement] ... confirmed the transfer of [Eaton's] interest in the marital home to [Grau] which had already taken place by quit claim deed recorded on December 2, 1997. At the time of divorce, however, the marital residence was in foreclosure. Thus, the parties incorporated into the [settlement agreement] a provision ... requiring [Grau] to pay the mortgage arrears and bring the loan obligation current. The [settlement agreement] also contained a provision ... addressing [Grau's] continuing financial obligation as to the mortgage on the former marital residence, requiring [Grau] to hold [Eaton] harmless for obligations arising out of his ownership. Specifically, the provision states:
"`The parties agree that [Eaton] shall have no further liability with respect to the mortgage indebtedness on the [marital home], the repairs thereon or any other obligations whatsoever. [Grau] shall continue to be fully and solely responsible for all future payments of the Note and Mortgage due on the property, together with real estate taxes and all other expenses related thereto. [Grau] agrees to indemnify and hold [Eaton] harmless from any and all further obligations from ownership of the property including, but not limited to, future claims of creditors, state, federal and municipal taxing authorities and the first mortgagee which are related to the property previously conveyed by [Eaton].'
"[(Emphasis added).]
"Significantly, for present purposes, the [settlement agreement] does not require [Grau] to remove [Eaton's] name from the mortgage. Neither does the [settlement agreement] require [Grau] to refinance or sell the former marital residence...."
368 N.J.Super. at 219, 845 A.2d at 709-10.
After the entry of the divorce judgment, Grau paid the arrearage on the mortgage and brought the former marital residence out of foreclosure. In 2001, however, Grau became unable to make the monthly mortgage payments and was served with a complaint for foreclosure, which also named Eaton. Eaton then filed a motion requesting that the trial court order Grau to remove her name from the mortgage on the former marital residence within 30 days by either refinancing it or selling it. The trial court denied Eaton's motion, and she appealed.
On appeal, the court in Eaton reasoned:
"The issue in this case arises out of the not uncommon divorce situation where, for consideration, ownership of the former marital residence is turned over to one party while both remain on the mortgage and accompanying note and are thus liable for payment thereon. *803 This is because it is not likely that the financial institution that holds the mortgage will readily agree to take the non-owner party's name off the loan documents. And while it is possible to stipulate in the [settlement agreement] who is to make the monthly payment, that does not absolve the other party from his or her obligation to the lender. Thus, if the party who is supposed to make the monthly payment defaults, not only will the other party be responsible for the amount dueplus late charges but his or her credit rating could be significantly damaged. One way to address such situations is for the parties to agree in advance that the owner will refinance or take out a mortgage in his or her own name and pay off the existing mortgage on the property within a specified period of time. Of course, if the single party cannot afford or qualify for refinancing, both parties may agree to remain owners until a date certain within which either the mortgage is refinanced or the house is sold.
"Needless to say, neither remedy was provided for in the [settlement agreement] at issue in this case. Instead, the parties settled on a `hold harmless' provision wherein `[Grau] agrees to indemnify and hold [Eaton] harmless from any and all further obligations from ownership of the property....' By forcing [Grau] now to either refinance or sell the property, [Eaton] in effect seeks to expand the `hold harmless' clause to incorporate remedial measures neither bargained nor provided for in the [settlement agreement]. This she cannot do."
368 N.J.Super. at 221-22, 845 A.2d at 711. Noting that the "hold harmless" provision was part of a property settlement and, thus, was not modifiable, the court in Eaton affirmed the trial court's judgment denying Eaton's requested relief. 368 N.J.Super. at 222, 845 A.2d at 711.
Similarly, in the present case, the parties' divorce judgment provided that the former husband would "be solely liable for the mortgages secured by the [former marital residence], thereby indemnifying and holding the [former w]ife harmless for same." Although the divorce judgment required the former wife to execute "all documents presented to her by the [former h]usband or his agent relating to any refinancing on the [former marital residence] necessary to fulfill the [former h]usband's obligations to the [former w]ife," the judgment did not require the former husband to refinance the mortgages. By requesting that the former husband be required to refinance the mortgages on the former marital residence, the former wife "in effect seeks to expand the `hold harmless' clause to incorporate remedial measures [not] ... provided for in the [divorce judgment]." Eaton, 368 N.J.Super. at 221-22, 845 A.2d at 711. Just like the court in Eaton, we conclude that ordering the former husband to refinance the mortgages on the former marital residence constitutes an impermissible modification to the property-division provisions of the amended divorce judgment.
Based on the foregoing, we reverse the trial court's judgment and remand the cause for the entry of a judgment consistent with this opinion.
The former husband has filed a motion to strike Exhibits A, B, and C attached to the former wife's brief and the parts of her brief that argue facts not in the record. That motion is granted.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
BRYAN, J., dissents, with writing.
*804 BRYAN, Judge, dissenting.
The parties' amended divorce judgment of July 28, 2006, provides, in pertinent part:
"The [former h]usband shall be solely liable for the mortgages secured by the [former marital residence], thereby indemnifying and holding the [former w]ife harmless for same. The [former w]ife shall execute all documents presented to her by the [former h]usband or his agent relating to any refinancing on the [former marital residence] necessary to fulfill the [former h]usband's obligations to the [former w]ife."
The amended divorce judgment contemplates that the former husband would necessarily refinance the mortgages in order to fulfill his obligations to the former wife. Therefore, the trial court's judgment of October 6, 2008, merely enforced the amended divorce judgment and did not constitute an impermissible modification of that judgment. Accordingly, I respectfully dissent.