70 So.3d 412 (2011)
B.R.F.
v.
A.V.F.
No. 2090872.
Court of Civil Appeals of Alabama.
March 4, 2011.
Rehearing Denied April 15, 2011.
*413 John D. McCord, of McCord & Martin, Gadsden, for appellant.
Jack W. Torbert, Jr., of Torbert & Torbert, P.A., Gadsden, for appellee.
BRYAN, Judge.
B.R.F. ("the father") appeals from a judgment entered by the Etowah Circuit Court ("the trial court") that divorced him from A.V.F. ("the mother") insofar as that judgment awarded the mother sole physical custody of the parties' child, failed to require the mother to refinance the mortgage on the marital residence, and required the father to pay a portion of the mother's student-loan debt.

Background and Procedural History
The parties were married in August 2005, and one child, a girl, was born of the marriage in September 2006. The father filed for a divorce on June 24, 2009, and the mother subsequently filed a counterclaim for a divorce. The trial court entered a pendente lite order that awarded the mother possession of the marital residence, awarded the parties joint legal custody of the child, awarded the mother primary physical custody of the child, and awarded the father visitation with the child. The father was also ordered to pay the mother pendente lite alimony and child support.
After conducting an ore tenus hearing, the trial court entered a judgment divorcing the parties on the ground of incompatibility of temperament. Pursuant to that judgment, the parties were awarded joint legal custody of the child, the mother was awarded primary physical custody of the child, the father was awarded specific visitation with the child, and the father was ordered to pay the mother child support.[1] The judgment awarded the mother all title to and interest in the marital residence, required the mother to pay the remaining *414 debt on the marital residence, awarded each party all the personal property in his or her possession, awarded each party the vehicle in his or her possession, ordered each party to be responsible for the debt on the vehicle in his or her possession, and ordered the father to pay the mother $7,000, which represented a portion of the mother's total student-loan debt.
The father filed a postjudgment motion pursuant to Rule 59, Ala. R. Civ. P., in which he challenged, among other things, the award of primary physical custody to the mother, his child-support obligation, and the requirement that he pay a portion of the mother's student-loan debt. The father also argued that the judgment "should provide for a certain time in which [the mother] should be allowed to have [the father's] name removed from the [mortgage on the marital residence]. . . ." The trial court subsequently entered an order granting the father's postjudgment motion by modifying the father's child-support obligation to $400 a month and by requiring the mother to "diligently seek refinancing to allow [the father]'s name to be removed from the mortgage. . . ." at the time that she "finishes school and obtains full-time employment." The father timely appealed.

Issues
On appeal, the father argues that the trial court erred by awarding the mother sole physical custody of the child, by failing to order the mother to refinance the mortgage on the marital residence at a "time certain," and by requiring the father to repay a portion of the mother's student-loan debt.

Facts
Before the start of the final hearing on March 29, 2010, the parties stated their agreement on the record that the mother would be awarded the marital residence, that she would be required to pay all the indebtedness on the marital residence, that each party would be awarded the personal property in his or her possession, and that each party would be awarded the vehicle in his or her possession. The mother testified that the marital residence was encumbered by a mortgage and that the balance of the mortgage at the time of the final hearing was approximately $80,000.
At the time of the final hearing, the mother was 27 years old, and she was a student at Jacksonville State University seeking a degree in art and art history. She planned to graduate from Jacksonville State University in the fall of 2010, and then she planned to go to the University of Alabama at Birmingham for one year to get her teaching certificate. The mother also worked part-time, approximately 14 to 20 hours a week, at an establishment called "The 215," earning $8.50 an hour.
The mother stated that the father had been unemployed at certain points during the parties' marriage and that the parties had been required to use her student-loan income to pay household utility bills, to pay for day-care expenses for the child, and to pay for repairs to the marital residence. The mother testified that her student-loan debt totaled approximately $30,000, and she asked the trial court to require the father to repay $10,000 as the portion of her student-loan debt that was used for the benefit of the father during the marriage.
The father, who was 29 years old at the time of the hearing, testified that he knew that some of the mother's student-loan income had been used to pay for repairs on the marital residence and that the parties had occasionally used her student-loan income to pay the utility bills associated with the marital residence. The father estimated that approximately $1,500 of the utility bills.
*415 According to the father and several witnesses testifying on his behalf, the father had been the child's primary caregiver, had cooked meals for the family, had potty-trained the child, had been the child's primary disciplinarian, and had been responsible for cleaning the marital residence. The mother had been a college student off and on throughout the parties' marriage, and, according to the father, the mother was always preoccupied with her school work when she was at home. However, the mother, along with several other witnesses, testified that the mother had been the child's primary caregiver and had managed the parties' household.
The father stated that, during the pendency of the divorce proceeding, the mother had offered him visitation with the child in addition to his scheduled pendente lite visitation because the child had expressed her desire to see the father. According to the father, between September 2009 and March 2010, the mother had offered the father between two and eight additional visitation days a month. The father testified that the mother had not allowed him to have additional visitation time with the child after he threatened to stop paying child support because he had custody of the child so often. The father admitted that he had denied the mother's request for additional visitation time with the child during the 2009 Christmas holidays. The mother testified that her mother and father had divorced when she was a child, that she had been raised primarily by her father, and that she knew what it was like to see one parent only four days a month, so, she said, she offered the father more opportunities to see the child for the child's sake.
At the time of trial, the father was living in a two-bedroom apartment, and he stated that there was ample room for the child to live with him. The father worked as a corrections officer, and his work schedule was on a 2-week pattern in which he worked a 12-hour shift, from 6:00 p.m. to 6:00 a.m., on Sunday, Wednesday, and Thursday the first week and in which he worked the same 12-hour shift on Monday, Tuesday, Friday, and Saturday the second week. The father stated that he wanted the trial court to allow the mother to care for the child on the days that he had to work.
In February 2008, the mother became concerned that the child had been sexually abused by a 19-year-old male family friend who had been babysitting the child. According to the mother, one evening when she returned home after the family friend had been babysitting the child, the child suddenly grabbed the mother's hand and began simulating a sexual act. The mother immediately made a video recording of the child simulating the sexual act. According to testimony presented during the pendente lite hearing and the final hearing, the mother, in the video, repeatedly demanded that the child repeat the sexual act that she had demonstrated to the mother. The child did not immediately repeat the act; instead, she did so only after the mother's repeated requests and after the mother stuck her hand in front of the child's face. The mother admitted that she was very upset at the time she made the video and that she had handled the situation inappropriately because she had been insistent that the child repeat the sexual act. On the advice of her father, the mother reported the incident to the Department of Human Resources ("DHR"). According to the father, DHR had investigated the mother's allegations and, because of the child's age, had found that there was not enough evidence to take *416 further action.[2]
The father testified that the parties had argued during the marriage about the sexual-abuse allegations made by the mother. The father admitted that he had never believed that their family friend had sexually abused the child, and the father testified that he had told the mother that if she continued to accuse innocent people of sexually abusing the child, she would loose custody of the child. According to the father, the mother had responded to his comment by punching him two or three times. After that incident, the father called the police, but he did not file a police report.
The mother and the father attended counseling sessions with Ron Campbell, a licensed professional counselor, after DHR had closed its investigation, and, during one of their sessions, the child climbed into the mother's lap and began simulating the same sexual act that had initially caused the mother concern. According to the mother, Campbell, who watched the incident occur, stated that he was certain something inappropriate had happened to the child. Campbell testified that the child's actions were "in no way . . . age-appropriate behavior" and that they were not normal child-like actions, as the father had suggested. Campbell stated that the video recording that the mother had made after she initially witnessed the child exhibiting inappropriate behavior could be characterized as leading and that the mother had exercised poor judgment in making the video, but he also stated that the mother was not trying to hurt the child by making the video. The father submitted the video recording made by the mother into evidence to demonstrate what he described as the mother's manipulation of the child. The trial-court judge stated on the record during the final hearing that he had been unable to play the video recording, but the trial-court judge stated that he would accept a substitute copy of the video made by the mother.
The father admitted that he had watched pornography that included the particular sexual act that the child had demonstrated to the mother. The father testified that the child had not been exposed to pornography, but he stated that the child had been in the home with him while he was watching pornography when the mother was not at home.
According to the father, the child's best interests would be served by placing the child in his custody because, he said, he interacts with the child more often than the mother does and he was concerned because the mother had "falsely used" the child by alleging that the child had been sexually abused. The father stated that he was also concerned about the child's maternal grandmother caring for the child because the mother had told the father that her mother, the child's maternal grandmother, suffers from bipolar disorder. Furthermore, the father testified that the mother had admitted kissing one of her male friends during the parties' marriage after the parties had gotten into an argument.

Discussion
On appeal, the father challenges the trial court's award of sole physical *417 custody of the child to the mother because, he argues, the evidence demonstrated that the mother was not a fit and proper person to have custody of the child. In support of his argument that the mother was unfit to have custody of the child, the father points to evidence indicating that he had been the primary caretaker of the child, that the mother had manipulated the child so she could accuse their family friend of sexually abusing the child, that the mother had never had a steady job, that the mother had trouble controlling her anger, that the mother had kissed another man during the parties' marriage, and that the mother had allowed the father to have excessive additional pendente lite visitation.
In Ex parte Byars, 794 So.2d 345, 347 (Ala.2001), our supreme court stated the applicable law and standard of review when an appellate court considers a challenge to an initial award of custody:
"Alabama law gives neither parent priority in an initial custody determination. Ex parte Couch, 521 So.2d 987 (Ala.1988). The controlling consideration in such a case is the best interest of the child. Id. In any case in which the court makes findings of fact based on evidence presented ore tenus, an appellate court will presume that the trial court's judgment based on those findings is correct, and it will reverse that judgment only if it is found to be plainly and palpably wrong. Ex parte Perkins, 646 So.2d 46 (Ala.1994). The presumption of correctness accorded the trial court's judgment entered after the court has heard evidence presented ore tenus is especially strong in a child-custody case. Id."
We note that much of the evidence presented to the trial court was disputed, including evidence regarding which party had been the child's primary caretaker, and the trial court could have determined that the mother had been the child's primary caretaker. See Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005) (quoting Philpot v. State, 843 So.2d 122, 125 (Ala. 2002)) (a trial court's findings on disputed facts are presumed correct). Moreover, the trial court could have concluded that, although the mother had made a poor judgment call by making the video recording, the mother had acted appropriately by initiating an investigation of the child's age-inappropriate behavior. Furthermore, the trial court could have concluded that the best interests of the child would be served by awarding sole physical custody to the mother because the evidence indicated that the mother recognized that it was important for the child to have consistent meaningful contact with her noncustodial parent, even if it required visitation in excess of what was awarded by the trial court. Moreover, the evidence in this case indicated that the mother's failure to maintain steady employment, considering that she had been a college student throughout most of the parties' marriage, had no impact on her ability to care for the child, and there was no indication that the mother's alleged adulterous conduct had any detrimental effect on the child or had otherwise impacted her ability to parent the child. See Giardina v. Giardina, 987 So.2d 606, 618 (Ala.Civ.App.2008) (noting that a parent's sexual misconduct is only a factor to be considered by a trial court in making a custody determination and that there must be evidence that the parent's misconduct was detrimental to the child). Accordingly, we cannot conclude that the trial court was plainly or palpably wrong in awarding sole physical custody of the child to the mother.
To the extent that the father argues that the trial court erred by failing to review the video recording of the child made by the mother that the father submitted *418 into evidence, our review of the record does not confirm that the trial court did not view the video before it made its custody determination. Because the record on appeal does not affirmatively demonstrate that the trial court did not review the video submitted into evidence, we will not assume that the trial court failed to do so. See Elliott v. Bud's Truck & Auto Repair, 656 So.2d 837, 838 (Ala.Civ.App. 1995) (citing Liberty Loan Corp. of Gadsden v. Williams, 406 So.2d 988 (Ala.Civ. App.1981)) ("This court does not presume error. In order for this court to consider an error asserted on appeal, that error must be affirmatively demonstrated by the record.").
Next, the father asks this court to order the trial court, on the authority of Barnes v. Barnes, 28 So.3d 800 (Ala.Civ. App.2009), to require the mother to refinance the marital residence within a reasonable time certain and, if she fails to do so, to require that the marital residence be sold in order to remove the father's name from the mortgage on the marital residence. Initially, we note that this court cannot consider the father's request that we order the trial court to enter an order requiring the sale of the marital residence if the mother does not refinance the mortgage on the marital residence by a specific date because the father did not present that argument to the trial court. See Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) ("This court cannot consider arguments raised for the first time on appeal. . . ."). However, we will consider the father's argument that the trial court failed to require the mother to refinance the mortgage on the marital residence and that the trial court failed to require the mother to do so by a date certain.
In Barnes, the husband was awarded the parties' marital residence pursuant to an amended judgment of divorce; in conjunction with that award, the husband was to be solely responsible for payment of the mortgages secured by the marital residence, and he was to indemnify and hold the wife harmless as to the debt evidenced by the mortgages on the marital residence. Id. at 800. Over two years later, at the request of the wife, the trial court entered an order requiring the husband to remove the wife's name from any mortgages associated with the marital residence within 120 days. Id. at 801. The husband appealed, and this court held that the trial court's order requiring the husband "to refinance the mortgages on the former marital residence constitute[d] an impermissible modification of the property-division provisions of the amended divorce judgment." Id. at 803.
The father argues that the provision in the amended judgment that requires the mother to "diligently seek refinancing" does not actually require the mother to refinance the marital residence. Therefore, under the authority of Barnes, the father would not be able to require the mother to refinance the marital residence in the future if the divorce judgment does not specifically require her to do so. However, we disagree with the father's assertion that the trial court did not require the mother to refinance the mortgage on the marital residence. Considering the father's initial postjudgment request for reliefthat the trial court "provide for a certain time in which [the mother] should be allowed to have [the father's] name removed from the [mortgage on the marital residence]"and considering the trial court's postjudgment order granting that specific request for relief by ordering the mother to "diligently seek refinancing" as soon as she finishes school and obtains full-time employment, we conclude that the clear intent of the trial court was to require the mother to refinance the mortgage *419 on the marital residence. See Boyd v. Franklin, 919 So.2d 1166, 1171 (Ala. 2005) (quoting Price v. Price, 360 So.2d 340, 343 (Ala.Civ.App.1978)) ("`If there is uncertainty and ambiguity in a . . . judgment, the [reviewing] court must construe it so as to express the intent of the . . . trial judge.'").
We note, however, that nothing in Barnes addresses the father's argument that the trial court's judgment should be reversed because it did not give a "reasonable time certain" as to the date the mother must refinance the mortgage on the marital residence. The evidence taken at trial indicated that the mother was a college student, that she worked only part-time, and that the mortgage debt on the marital residence totaled approximately $80,000. The trial court's judgment setting the time that the mother must begin to seek to refinance the mortgage on the marital residence clearly takes into account the evidence in the record indicating that the mother did not have the means to refinance the mortgage on the marital residence at the time the judgment was entered. Although the judgment does not require the mother to refinance the mortgage on the marital residence by a specific date, the father has not cited any authority to support his argument that the trial court was required to make such as order. See Rule 28(a)(10), Ala. R.App. P. (requiring arguments presented on appeal to be supported by cases, statutes, and any other authority relied on). Decisions regarding how an equitable division of property should be effectuated are left to the discretion of the trial court, see Grelier v. Grelier, 63 So.3d 668 n. 5 (Ala.Civ.App.2010) (citing Roberts v. Roberts, 802 So.2d 230, 235 (Ala.Civ.App.2001)) (recognizing the trial court's discretion in effectuating an equitable property division in a divorce action), and this court will not reverse a part of a trial court's judgment that is left to its discretion unless it is shown that the trial court exceeded its discretion or that the judgment is plainly or palpably wrong. See Romano v. Romano, 703 So.2d 374, 375 (Ala.Civ.App.1997). Because we cannot conclude that the trial court exceeded its discretion regarding the refinancing provision, or that the refinancing provision was plainly and palpably wrong, that aspect of the divorce judgment requiring the mother to refinance the mortgage on the marital residence after she finishes school and obtains full-time employment is affirmed.
Finally, the father argues that the trial court erred when it ordered the father to pay the mother $7,000, which represented a portion of the student-loan debt taken out by the mother during the marriage that was used for the benefit of the father during the marriage. The father argues that the mother's student-loan debt cannot be considered a joint marital debt of the parties and that, therefore, the trial court had no jurisdiction to order the father to pay a portion of the mother's student-loan debt. Although the evidence indicated that the mother had taken out student loans in her name for her use in completing her postsecondary education, the evidence also indicated that the parties had used the income the mother received from those loans for the benefit of both parties during the marriage. We note that, generally, it is left to the discretion of the trial court to decide how the payment of debts incurred during a marriage will be divided in a judgment of divorce. See Scruggs v. Scruggs, 456 So.2d 319, 323 (Ala.Civ.App.1984) ("In providing for the payment of debts, the trial court is granted much latitude in the exercise of its judicial discretion, and we may not disturb the findings of a trial court upon such a matter *420 unless the holding was so palpably wrong as to constitute an abuse of discretion.").
The father has not cited any authority to support his argument that the trial court could not have considered the mother's student-loan debt to be marital debt.
"Rule 28(a)(10), Ala. R.App. P., requires that arguments in an appellant's brief contain `citations to the cases, statutes, other authorities, and parts of the record relied on.' . . . [I]t is well settled that a [party's] failure to comply with the requirements of Rule 28(a)(10) requiring citation of authority in support of the arguments presented provides this Court with a basis for disregarding those arguments. Ex parte Showers, 812 So.2d 277, 281 (Ala.2001)."
State Farm Mut. Auto. Ins. Co. v. Motley, 909 So.2d 806, 822 (Ala.2005). Because the father has failed to cite any authority to support his argument, we will not consider it. Accordingly, the provision of the divorce judgment requiring the father to pay the mother $7,000 is affirmed.

Conclusion
The judgment of the trial court is affirmed. The father's motion to strike specific portions of the mother's brief on appeal is denied, and the mother's motion to strike the father's reply brief is denied. However, we note that this court has considered only the evidence properly presented to the trial court and contained in the record on appeal.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.
NOTES
[1] This court has determined that an award of "primary physical custody" to a parent should be construed as an award of sole physical custody to that parent. Cf. Smith v. Smith, 887 So.2d 257, 262 (Ala.Civ.App. 2003); § 30-3-151, Ala.Code 1975 (defining the terms to be used in a custody determination).
[2] The father testified at an August 2009 pendente lite hearing that the mother's grandmother later reported to DHR that the father may have sexually abused the child. However, according to the father, the mother reported to DHR that she did not believe that the father had sexually abused the child. The parties stipulated that, by the time of the final hearing in March 2010, DHR had not made any indicated findings of sexual abuse perpetrated by the father against the child and that DHR was no longer pursuing any investigation of the father.