Rel: May 8, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2025-2026

_____

### CL-2025-0456

_____

**Ashlyn Savanna Farris**

**v.**

**Daniel Wayne Farris**

**Appeal from Winston Circuit Court**
**(DR-23-900098)**

BOWDEN, Judge.

Ashlyn Savanna Farris ("the mother") appeals from a judgment entered by the Winston Circuit Court ("the circuit court") divorcing her and Daniel Wayne Farris ("the father"), awarding the father sole physical

custody of the parties' minor child, and dividing the parties' marital home.

## Background and Procedural History

On November 16, 2023, the father filed in the circuit court a complaint for a divorce from the mother on the bases of incompatibility of temperament and an irretrievable breakdown of the marriage. On November 20, 2023, the mother filed an answer denying the allegations contained in the father's complaint along with a counterclaim for a divorce from the father. On November 29, 2023, the father filed a motion for a pendente lite hearing, which stated that the mother was not facilitating reasonable opportunities for the father to see the parties' child and requested that the circuit court address temporary custody.

At a hearing on January 31, 2024, the father testified that he and the mother were married on June 1, 2019, and separated in November 2023. He also testified that the parties shared a child, who was born on August 22, 2023. The father then testified that the mother had made it difficult for him to see the parties' child since the separation, though he had been able to visit with the child on a few occasions. During the

hearing, the parties reached an agreement to share joint legal custody and joint physical custody of the child.

Following the January 31, 2024, hearing, the circuit court entered an order reflecting that agreement and awarding the parties joint legal custody and joint physical custody. In the order, the circuit court implemented an alternating schedule whereby each party would have physical custody of the child for three days at a time.

The parties appeared for the trial on January 6, 2025. During the trial, the father testified that the shared custody-arrangement had been going well, and he requested that the circuit court award the parties joint physical custody. He requested that the physical-custody schedule be changed to provide a seven-day alternating schedule instead of the pendente lite three-day schedule. The father also requested that the circuit court establish a custody schedule for holidays and vacations in the final judgment.

When the parties separated in November 2023, the mother moved in with her parents. The father testified that the mother's new residence was about 100 miles, or 2 hours of travel, away. The mother testified that she lived with her parents in north Alabama and worked for a Tennessee

school district as a teacher. The father testified that he was a tenured employee with the school district where the parties had lived.

The parties both testified that the child should have regular contact with both parents, and the mother testified that she believed that she and the father could coparent the child successfully with their then-current living arrangements. Neither party criticized the other's parenting abilities. However, the mother requested sole physical custody of the child. She testified that she was concerned about the child's future schooling and expressed that a joint-custody award might need to be revisited once the child began attending school. The mother testified that she had researched opportunities and benefits that would be available to the child in Tennessee schools because of her employment.

The father testified that the child seemed fine traveling back and forth under the pendente lite order during the year before the trial. However, the father also testified that he was concerned about the child's future schooling arrangements, and he stated that maintaining a relationship with the child would be difficult if the child was enrolled in school farther away.

Regarding the parties' marital home, the father testified that his parents gave the parties 20 acres of land adjoining another 20 acres that his parents owned. The parties began building the marital home in 2021, and it was completed in 2022. A survey conducted during the proceedings revealed that the marital home was built almost entirely on the father's parents' land. The circuit court initially questioned whether it could proceed with dividing the home without the father's parents being parties to the case, with the circuit court stating as follows:

> "THE COURT: Here's the issue we've got. Y'all live in a home you don't own, and, when I go to divide this home, I can only give you what you own; so your mom and dad have a vested interest in this case should I decide to give -- to say give you the home, then I'm only giving you what's on y'all's land. Do you see what I'm saying?
>
> "....
>
> "THE COURT: The 60 feet belong to his momma and daddy. This is nothing y'all's lender can do or anything. That is their home because it is a fixture on the land. So what I'm trying to figure out is how do we move forward without your momma and daddy actually being parties to the case? I mean, I don't know if we can talk real quick and figure out will they agree to a quit claim or do we all just agree that we don't worry about dividing the house, figure out -- you have an appraisal, and I'm sure you have an appraisal, figure out what the value of the home is and how we decide it, we pay that in cash? You see?"

At the end of that discussion, the circuit court elected to proceed with testimony while noting on the record that the parties and the circuit court were aware of the issue with the property division due to the encroachment on the father's parents' land.

At a later point during the trial, the parties reached an agreement, which they announced with the explicit purpose of assuaging the circuit court's concerns regarding the ownership interests of the marital home. The parties stipulated to the value of the marital home and agreed that the father would be awarded the home, with equity to be split equally between the parties. The father requested that the mother's portion of the equity in the home be reduced due to household bills that he had continued to pay in full following the parties' separation. Counsel for the father stated that, by the terms of the parties' agreement, the father, "at the appropriate time, could deal with [the ownership interests in the marital home] with his parents and really that's where it should lie between he and them on that matter." The transcript is clear that the mother agreed with those terms, other than the father's request for an offset of her equity award. No further objection was made as to the absence of the father's parents as parties to the action.

6

On January 27, 2025, the circuit court entered a final judgment divorcing the parties on the basis of incompatibility of temperament. The provision of the judgment that addressed the parties' marital home stated:

"The [father] shall be invested and the [mother] shall be divested of all rights[,] title, interest and ownership of the marital home and adjoining land .... [The father] shall be responsible for the payment of the mortgage indebtedness owed on the marital home and indemnify and hold the [mother] harmless from the payment of said debt. In conjunction with this order, the [mother] shall transfer all of her rights, title and interest in the real property and marital home by executing a quit claim deed to the [father]. To the extent there is any other real property owned by the parties, the [father] shall be invested in all rights, title[,] interest and ownership of such real property and the [mother] shall be divested of all rights, title, interest and ownership of such real property.

"The [mother] shall receive $44,570.10 dollars of equity from the marital home. This figure is based on the stipulation of the Parties as to the appraised value of the marital residence at $410,660.00. After deducting the outstanding balance owed on the marital residence the Court finds the total equity of $147,388.61 ... which equates to $73,694.30 when divided equally. Therefore, taking this figure and deducting one-half of the expenses [the father] paid as set forth in [the father's] Ex #18, the Court arrives at an additional deduction from the [mother]'s equity in the marital residence in the amount $29,124.20. Deducting this figure from the [mother]'s equity of $73,693.30, the Court arrives at a net equity of $44,570.10 to be paid to the [mother] within 45 days from the date of this order."

7

As to the physical custody of the parties' child, the circuit court's judgment stated, in pertinent part:

> "A. Sole Physical Custody: The [father], shall be awarded the sole and primary physical care[,] custody and control of the Minor Child of the Parties .... Should the [mother] move back into the jurisdiction of the [school district where the marital home is located], then in such event, the Parties shall have joint physical custody of the Minor Child and shall have a custodial schedule of seven (7) days on and seven (7) days off."

The circuit court awarded the parties joint legal custody of the minor child and awarded the mother visitation with the child every other weekend. The circuit court's judgment also set forth a holiday- and summer-visitation schedule.

On February 16, 2025, the mother filed a motion to alter, amend, or vacate the judgment. The mother's motion was denied by operation of law. The mother timely appealed.

## Standard of Review

"On appeal, questions of law and the trial court's application of the law to the facts are subject to de novo review." Samayamanthula v. Patchipulusu, 338 So. 3d 787, 792 (Ala. Civ. App. 2021).

"As to questions of fact,

"'"[w]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust." Philpot v. State, 843 So. 2d 122, 125 (Ala. 2002). "'The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.'" Waltman v. Rowell, 913 So. 2d 1083, 1086 (Ala. 2005) (quoting Dennis v. Dobbs, 474 So. 2d 77, 79 (Ala. 1985)).'

"Fadalla v. Fadalla, 929 So. 2d 429, 433 (Ala. 2005). Moreover,

"'an appellate court reviewing a circuit court's judgment in a divorce action is not to substitute its judgment of the facts for that of the circuit court. ... Instead, the appellate court is "simply to determine if there was sufficient evidence before the circuit court to support its decision against a charge of arbitrariness and abuse of discretion." [Ex parte Smith, 673 So. 2d 420, 422 (Ala. 1995)].'

"Ex parte Elliott, 782 So. 2d 308, 311 (Ala. 2000)."

Id. at 792-93.

## Analysis

### I. Whether the circuit court erred by awarding sole physical custody of the parties' child to the father

The mother argues that the evidence presented at trial did not support an award of sole physical custody to the father because the

9

evidence showed that the parties had exercised joint physical custody successfully for one year before trial.

When making a custody determination in a divorce action,

"the parties stand on an equal footing with no presumption of entitlement to custody inuring to either parent. See Ex parte Couch, 521 So. 2d 987, 989 (Ala. 1988); see also Smith v. Smith, 727 So. 2d 113, 114 (Ala. Civ. App. 1998). The primary concern in making an initial determination of child custody incident to a divorce action is the best interests of the children. See Couch, 521 So. 2d at 989; see also C.B.B. v. J.S.D., 831 So. 2d 620, 621 (Ala. Civ. App. 2002). To that end, the trial court is given wide discretion in awarding custody and establishing visitation, and its determination of such matters will not be reversed absent a showing of a clear abuse of discretion. See Kovakas v. Kovakas, 12 So. 3d 693, 697 (Ala. Civ. App. 2008); see also Kent v. Green, 701 So. 2d 4, 5 (Ala. Civ. App. 1996)."

Lowery v. Lowery, 72 So. 3d 701, 704 (Ala. Civ. App. 2011). Additionally,

"[t]he ore tenus rule is based, in part, on the unique position of the trial court to personally observe the parties and witnesses and to assess their demeanor and credibility. See Ex parte Fann, 810 So. 2d 631, 633 (Ala. 2001); see also Kent v. Green, 701 So. 2d [4,] 5 [(Ala. Civ. App. 1996)]. Additionally, '"[i]n child custody cases especially, the perception of an attentive trial judge is of great importance."' Fann, 810 So. 2d at 633 (quoting Williams v. Williams, 402 So. 2d 1029, 1032 (Ala. Civ. App. 1981)). Factors to be considered in making a child-custody award include the age and sex of the children; their emotional, social, moral, material, and educational needs; and the characteristics of those seeking custody, including their age, character, stability, mental and physical health, and their respective home environments. See Ex parte Devine, 398 So. 2d 686, 696-97 (Ala. 1981)."

10

Id. at 705.

Furthermore, § 30-3-152, Ala. Code 1975, provides:

"(a) The court shall in every case consider joint custody but may award any form of custody which is determined to be in the best interest of the child. In determining whether joint custody is in the best interest of the child, the court shall consider the same factors considered in awarding sole legal and physical custody and all of the following factors:

"(1) The agreement or lack of agreement of the parents on joint custody.

"(2) The past and present ability of the parents to cooperate with each other and make decisions jointly.

"(3) The ability of the parents to encourage the sharing of love, affection, and contact between the child and the other parent.

"(4) Any history of or potential for child abuse, spouse abuse, or kidnapping.

"(5) The geographic proximity of the parents to each other as this relates to the practical considerations of joint physical custody.

"(b) The court may order a form of joint custody without the consent of both parents, when it is in the best interest of the child.

"(c) If both parents request joint custody, the presumption is that joint custody is in the best interest of the child. Joint custody shall be granted in the final order of the

11

court unless the court makes specific findings as to why joint custody is not granted."

However, there is no presumption that joint custody is in a child's best interest without a request by <u>both</u> parents that the trial court award joint custody. <u>Vest v. Vest</u>, 215 So.3d 552, 558-59 (Ala. Civ. App. 2016).

In this case, while the father requested joint physical custody and joint legal custody of the child, the mother requested that the circuit court award her sole custody. As a result, the circuit court was not required to presume that joint custody was in the child's best interest. The fact that the parties did not agree on an award of joint custody is a factor that the circuit court could have considered. Additionally, while evidence showed that the parties were able to coparent successfully during the year that they shared joint custody, evidence also showed that the parties had some difficulty in making decisions for the child together before the entry of the pendente lite order. Evidence indicated that the mother restricted the father's access to the child during the period between their separation and the entry of the pendente lite order.

The parties acknowledged that regular contact with both parents would be good for their child; however, the evidence also indicated that there may be practical limitations to a joint-custody award given that the

12

mother moved roughly two hours away from the parties' former marital home. Additionally, the circuit court could have found that the child's continuing to grow up primarily in the former marital home would promote the child's social needs and stability. Therefore, we cannot say that the circuit court clearly abused its discretion in making the custody determination in the divorce judgment.

II. Whether the circuit court erred in declining to add the father's parents as necessary parties to the action

The mother argues that the circuit court lacked jurisdiction to divide the parties' marital home because it sits on land owned by the father's parents, who, she says, were, therefore, necessary parties that the circuit court failed to add.

> " 'The law is well settled that a party may not induce an error by the trial court and then attempt to win a reversal based on that error. "A party may not predicate an argument for reversal on 'invited error,' that is, 'error into which he has led or lulled the trial court.' " Atkins v. Lee, 603 So. 2d 937, 945 (Ala. 1992) (quoting Dixie Highway Express, Inc. v. Southern Ry., 286 Ala. 646, 651, 244 So. 2d 591, 595 (1971)). "That doctrine [of invited error] provides that a party may not complain of error into which he has led the court." Ex parte King, 643 So. 2d 1364, 1366 (Ala. 1993). "A party cannot win a reversal on an error that party has invited the trial court to commit." Neal v. Neal, 856 So. 2d

13

766, 784 (Ala. 2002). See also <u>Liberty Nat'l Life Ins. Co. v. Beasley</u>, 466 So. 2d 935, 937 (Ala. 1985); <u>State Farm Mut. Auto. Ins. Co. v. Humphres</u>, 293 Ala. 413, 418, 304 So. 2d 573, 577 (1974).'

"<u>Mobile Infirmary Med. Ctr. v. Hodgen</u>, 884 So. 2d 801, 808 (Ala. 2003)."

<u>Sutchaleo v. Sutchaleo</u>, 228 So. 3d 475, 478-79 (Ala. Civ. App. 2017).

Once the father's testimony at trial revealed that the parties' marital home was built on his parents' land, the circuit court raised concerns about how that fact impacted ownership interests and whether the circuit court could even divide the home in the divorce judgment without the father's parents being joined as parties to the action. The parties later reached an agreement that was explicitly intended to address those concerns, and the terms of that agreement were reflected nearly identically in the divorce judgment, with the circuit court additionally granting the father's request to reduce the mother's equity payment.

To the extent that the mother now argues that the divorce judgment was made without joining the father's parents as necessary and indispensable parties, that is an error that she invited by agreeing to divide the parties' interests in the home in the parents' absence. The

agreement, which the parties intended as a means to avoid the issue of joinder, led the circuit court to enter the divorce judgment containing the terms of the property division reflecting that agreement. The mother now seeks reversal on a purported error that she invited the circuit court to commit; therefore, we cannot say that the circuit court erred in failing to join the father's parents as parties to the action.

### III. Whether the circuit court's division of property was equitable

The mother argues that the circuit court's division of property was inequitable for two reasons -- (1) because the circuit court awarded her 30% of the equity in the parties' marital home and (2) because the circuit court did not expressly require the father to remove her from the mortgage obligation on the parties' marital home.

#### a. Whether the circuit court's division of the equity in the parties' marital home was equitable

The mother first argues that she was effectively awarded only 30% of the equity in the parties' marital home because her equity award was reduced to account for home bills and expenses that the father paid for in full during the parties' separation.

> "'The law is clear that matters such as alimony
> and property division pursuant to divorce rest

15

soundly within the discretion of the trial court and will not be disturbed on appeal except where such discretion was palpably abused. Montgomery [v. Montgomery, 519 So. 2d 525 (Ala. Civ. App. 1987)]. The issues concerning alimony and the division of property are interrelated, and in determining whether the trial court abused its discretion as to either of those issues, the entire judgment must be considered. Montgomery, supra. Many factors, including the conduct of the parties regarding the cause of the divorce, are proper to consider in making an equitable division. Lutz v. Lutz, 485 So. 2d 1174 (Ala. Civ. App. 1986). The award is not required to be equal, but must be equitable in light of the evidence, and what is equitable rests within the sound discretion of the trial court. Ross [v. Ross, 447 So. 2d 812 (Ala. Civ. App. 1984)]. An award that favors one party over the other is not in and of itself an abuse of discretion. Jordan v. Jordan, 547 So. 2d 574 (Ala. Civ. App. 1989).'

"Boykin v. Boykin, 628 So. 2d 949, 952 (Ala. Civ. App. 1993)."

Martin v. Martin, 85 So. 3d 414, 421 (Ala. Civ. App. 2011). This court has further stated that

"'[t]he factors the trial court should consider in dividing the marital property include "the ages and health of the parties, the length of their marriage, their station in life and their future prospects, their standard of living and each party's potential for maintaining that standard after the divorce, the value and the type of property they own, and the source of their common property." Covington v. Covington, 675 So. 2d 436, 438 (Ala. Civ. App. 1996).'

16

> Courtright v. Courtright, 757 So. 2d 453, 456 (Ala. Civ. App. 2000)."

Id.

In her brief, the mother argues that the circuit court failed to adequately award her for her interest in the marriage because both parties contributed to the expenses of the home during the marriage; however, the mother points out, during the parties' separation, she was not receiving the benefits of some of the expenses that the father paid in full, such as home utilities. She also points out that there was no court order in place requiring her to pay a portion of those expenses pendente lite. The mother goes on to cite Adams v. Adams, 778 So. 2d 825 (Ala. Civ. App. 2000), Stewart v. Stewart, 62 So. 3d 523 (Ala. Civ. App. 2010), and Kaufman v. Kaufman, 934 So. 2d 1073 (Ala. Civ. App. 2005), in support of her position. Each of those cases are distinguishable and do not compel reversal of the circuit court's judgment in this case.

In Adams, this court reversed a divorce judgment awarding the wife in that case 16% of the marital property because the award was inequitable since the wife had no retirement plan or Social Security account of her own. 778 So. 2d at 827. We also held that the trial court had overemphasized some evidence indicating that the wife might

17

mismanage any assets she was awarded. Id. In Stewart, we reversed the trial court's judgment dividing the parties' property and failing to award alimony to the wife because the combination of the lack of alimony and the treatment of real property used for the common benefit of the parties during the marriage as separate property of the husband left the wife with virtually nothing. 62 So. 3d at 528-31.

Finally, in Kaufman, we held that the trial court had abused its discretion in fashioning its property division and alimony award because the property award disproportionately favored the husband. 934 So. 2d at 1080-81. In Kaufman, the trial court had awarded the wife 23% of the parties' marital property and $500 per month in periodic alimony for five years. Id. at 1078. We held that this was an inequitable property division because accounts that the parties had accumulated during the marriage were not included in the marital property that was divided and because the trial court had not adequately considered the wife's contributions to the marriage, monetary or otherwise, or that the parties had been married for 33 years and were at or nearing retirement age. Id. at 1080-81.

Unlike in the cases that the mother cites, she does not argue, and there is no evidence indicating, that the circuit court improperly categorized any assets as separate property that should have been categorized as marital property. Here, the mother has her own retirement account, and each party was awarded their own retirement account. The circuit court awarded the mother 50% of the equity in the parties' marital home, reduced by an amount that the father testified that he had paid in home bills and expenses during the parties' separation. None of the cases cited by the wife state that such a reduction is not within the circuit court's discretion.

Furthermore, the mother does not consider how the other factors of this case may have weighed on the circuit court's determination of the division of the equity in the parties' marital home. Both parties are young and employed, and no evidence suggested that the mother was at a disadvantage in her future earning capacity. Again, the circuit court may also have considered some of the mother's conduct during the parties' separation when fashioning the division of the equity in the parties' marital home. Evidence reflected that the mother restricted the father's access to the child during their separation and withdrew a significant

amount of money from the parties' joint bank account upon moving out of the marital home. As a result, we cannot say that the circuit court abused its discretion in dividing the equity in the parties' marital home.

b. Whether the circuit court should have ordered the father to remove the mother from the mortgage obligation on the marital home

The mother argues that the property division was also inequitable because it does not explicitly require the father to remove her from the mortgage obligation on the parties' marital home. In support of her argument, the mother cites DeJean v. DeJean, 406 So. 3d 835, 844 (Ala. Civ. App. 2024), and Barnes v. Barnes, 28 So. 3d 800 (Ala. Civ. App. 2009). In DeJean, the husband appealed from a divorce judgment that, in pertinent part, awarded the parties' marital home to the wife. 406 So. 3d at 844. We held that it was inequitable in that case for the trial court not to require the wife to attempt to assume the loan on the home within a reasonable time to relieve the husband of his liability for that loan. Id. at 846. We also held that the property division must have a requirement that the wife indemnify the husband from loss until such time when he could be released from liability. Id. Although DeJean does not stand for

the proposition that a trial court dividing marital property encumbered by a note secured by a mortgage must require the party being awarded the property to attempt to refinance the note in every case, it does suggest that the failure to do so may be inequitable in some cases.

In Barnes, the former husband appealed from a judgment that required him to have the former wife's name removed from all debt associated with the parties' former marital residence. 28 So. 3d at 800. The divorce judgment that had been entered awarded the former husband the former marital residence, ordered the former wife to execute a quitclaim deed in his favor, and ordered that the former husband would be solely liable for the note secured by the mortgage on the former marital residence, thereby indemnifying and holding harmless the former wife for the same. Id. at 800-01. Two years after the divorce judgment was entered, the former wife filed a petition seeking to hold the former husband in contempt, arguing in part that the former husband had not refinanced the debt on the marital residence solely in his name. Id. at 801. The trial court ultimately ordered the former husband to refinance the debt, which it found to be consistent with the spirit of holding the former wife harmless on the debt. Id. We held that the divorce judgment

21

had not required the former husband to refinance the debt and that ordering him to do so was an impermissible modification to the property-division provision of the divorce judgment. <u>Id.</u> at 803. Taken in tandem with <u>DeJean</u>, and as we stated in that case, the indemnity provision is of critical importance because such issues cannot be addressed through a modification proceeding. <u>DeJean</u>, 406 So. 3d at 846.

In this case, the portion of the judgment dealing with the parties' real property states: "[The father] shall be responsible for the payment of the mortgage indebtedness owed on the marital home and indemnify and hold the [mother] harmless from the payment of said debt." So, although the judgment does provide the mother with some protection from liability for nonpayment of the mortgage obligation, <u>DeJean</u> suggests that more may be required depending on the circumstances of the case. The evidence indicates that the maturity date of the note secured by the mortgage is 2052. If the father does not attempt to refinance the debt to remove the mother from being liable for that debt, her credit could be tied to the marital home and the associated debt for decades into the future. See <u>Verzal v. Verzal</u>, 29 Neb. App. 904, 910-11, 962 N.W.2d 563, 568 (2021). The father presented no evidence to suggest that refinancing the

22

debt would be impossible. The mother testified that she hoped to have her own home someday and argues now on appeal that the mortgage obligation hinders her ability to do so and looms over her personal financial status such that it renders this provision of the judgment inequitable. We agree and therefore reverse the circuit court's judgment to the extent that it does not require the father to attempt to refinance the note secured by the mortgage on the parties' marital home. In doing so, we do not hold that a trial court dividing real property encumbered by a note secured by a mortgage must always require the party being awarded the property to attempt to refinance the debt in his or her sole name. Such a decision is left within the sound discretion of the trial court upon consideration of factors including, although not limited to, the maturity date of the note secured by the mortgage, the individual financial situations of the parties, and other provisions of the judgment and property division that may practically affect the decision to require a party to attempt to refinance or the timing or other specific details of such a requirement.

Conclusion

Based on the foregoing, we affirm the judgment of the circuit court in part, reverse it in part, and remand the cause for the entry of a judgment consistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Moore, P.J., and Edwards, Hanson, and Fridy, JJ., concur.