THOMAS, Judge.
Crysten Ann Martin (“the wife”) appeals from a judgment of the Lee Circuit Court (“the trial court”) divorcing her from Gary Everett Martin (“the husband”).

Facts and Procedural History

The parties were married on March 28, 2002. The parties have one minor child — a son who was born on May 11, 2004 (“the child”). The husband filed for a divorce on May 1, 2009, claiming incompatibility of temperament and an irretrievable breakdown of the marriage. On June 12, 2009, the wife answered and counterclaimed for a divorce. Additionally, the wife filed a “motion for pendente lite hearing and relief,” requesting temporary custody of the child, child support, possession of the marital residence, and that the husband be required to pay the parties’ debts and obligations pending a final hearing in the divorce action.
The trial court conducted a pendente lite hearing on August 25, 2009. During that hearing, the husband, the wife, and Keela Lee Christopher, the wife’s mother, testified. The wife testified that she had engaged in an extramarital affair with a former coworker. She testified that the affair had lasted for approximately six to eight weeks. The wife testified that she has a degree in marketing and that she works in marketing at Hayley-Redd Development, L.L.C., as well as conducting her own personal photography business. Based on the average combined income from her jobs, the wife testified that she made about $3,500 per month. She opined that it would be best to set up two separate homes for the child, instead of allowing both parties to remain in the marital residence together, because of the arguments and “mood” in the household. The wife testified that the “mood” had been altered because the husband had become angry and unpredictable since filing for divorce. Although she had initially requested possession of the marital residence, she testified that she had arranged free housing for both her and the minor child through her employer.
The wife also testified that she should receive custody of the child because she had been the child’s primary caregiver for the majority of his life. Specifically, she had stayed at home with the child during the first year of his life; she was the only person to ever cut his fingernails or toenails; she bought all the child’s school clothes; and she had relationships with all the child’s friends and their parents. She further testified that she was the parent responsible for keeping the household in order by doing laundry, cooking, and cleaning. In contrast, the wife explained, the husband had been responsible for the garage and exterior of the home, which, she testified, he did not keep clean and upon which he failed to perform normal required maintenance.
Further, the wife testified that the husband was not a bad father and that he had the child’s best interest in mind. However, she had concerns about his parenting ability because, she said, the husband has attention deficit disorder (“ADD”), for which he takes medication. Additionally, she said that the husband typically consumes two to three alcoholic beverages about five nights a week. She testified that the husband was routinely late, and she feared that the child’s routine and structure currently in place would be altered if the husband was awarded custody. Moreover, the wife testified that the husband had been recording her conversations in both the marital home and in her automobile. Specifically, she testified that he had collected over 4,000 hours of record *417 ings, which, she said, he would listen to with headphones while caring for the child.
During the pendente lite hearing, the husband testified that he works at Auburn University in the agronomy and soils department and earns $2,976 per month. He also pays $363.47 per month for health-insurance coverage, which includes coverage for the child. He testified that there was no mortgage on the marital residence because it had been a gift from his parents but that the marital debt consisted of a home-equity line of credit and credit cards solely in his name. The husband testified that the home-equity line of credit had been used to pay off the debt owed on the wife’s automobile, to finance family vacations, and for normal expenses during the marriage. He said that the debt was in his name alone because the wife had filed for bankruptcy in 2002.
He testified that the wife was employed during most of the marriage, although, he said, she took a year off when the child was born and had had short stints of unemployment after being discharged by various employers. He testified that he knows how to wash dishes, to do laundry, and to clean house. Further, the husband testified that he does take medication for his ADD and that he drinks about two to three alcoholic beverages per night.
Additionally, the husband testified that he had been involved in every aspect of the child’s life. He said that he had taken care of the child without the assistance of the wife on several occasions when she was out of town without any problems. Further, he testified that he had taken the child on trips to visit his parents as well as the wife’s parents. The husband testified that he enjoys spending time with the child and that they engage in many outdoor activities together. Moreover, he testified that the wife had attempted to place the child on a schedule and that he had attempted to continue to follow the schedule, although, he said, both parties had strayed from it from time to time. He testified that the wife had expressed a desire to be with the child and to continue caring for him but that he had some doubts as to her parenting capabilities.
The husband requested that the trial court award him custody of the child because he did not feel like the wife was fulfilling her duties as a parent since the time she had engaged in the affair. Specifically, he said, she had been financially irresponsible and inattentive to the child. Additionally, he stated that he had spoken with his employer and that he would be able to take the child to school and pick him up afterwards should he be awarded custody of the child.
Mrs. Christopher, the wife’s mother, testified that both the wife and the husband were able and willing parents who had the child’s best interest in mind. However, she opined that the trial court should award custody to the husband because the wife was “spinning some pretty big tales” and that she “would like [the wife] to get some help” because, she believed, the path the wife was on could affect the child.
On August 26, 2009, after considering the testimony and the exhibits presented at the hearing, the trial court awarded the husband sole pendente lite custody of the child and allowed the wife “reasonable and liberal visitation” with the child. Moreover, the husband was awarded exclusive control of the marital residence pending the divorce trial, and the wife was ordered to vacate the martial residence and to pay $786.00 per month in pendente lite child support.
On June 4, 2010, the trial court conducted a trial regarding the divorce. The parties agreed to incorporate the testimony from the pendente lite hearing into the *418 record. During the trial, the parties and several additional witnesses testified. Golden Jenkins, a licensed counselor, testified that she had met the wife during a parenting class the parties had been mandated to attend. She opined that the wife had a strong desire to be reunited with the child and that she did not have any concerns about the wife’s ability to serve as the child’s caretaker. Jenkins said that she had met the husband only briefly, but, she said, during that brief meeting, she did not observe anything that gave her cause to doubt the husband’s ability to care for the child. However, she testified that, based on information the wife had shared with her about the husband, she did have some concerns about his parenting abilities. It was undisputed that the husband did not complete the mandated parenting class during the pendency of the divorce action.
Janet Johnson, the principal of the child’s school, also testified at trial. She testified that the child had been tardy 13 times since the husband had been awarded sole pendente lite custody. Johnson testified that the wife was active at the child’s school and had visited him numerous times during the lunch hour. Johnson further testified that the child never came to school unprepared, dirty, or malnourished.
Dr. Larry Estep, the husband’s doctor, testified that he had been treating the husband’s ADD for the last three years. He stated that the ADD was fully controlled by medication. Further, he testified that moderate drinking, such as two to three alcoholic beverages per night, in conjunction with taking the husband’s prescribed dosage of medication, was not harmful. Additionally, Dr. Estep opined that he had not observed any behavior in the last three years that would limit the husband’s ability to function as a good parent.
During the trial, three of the wife’s former coworkers testified. Justin Smith testified that he had engaged in an affair with the wife when she worked with him at Kinnucan Enterprises, Inc. He stated that the affair had lasted from the middle of March until the end of May 2009 and that they had rekindled their relationship sometime in the fall of 2009. He also testified that the wife had given him monetary gifts totaling approximately $1,000. However, he stated that he had repaid some, but not all, of that money. Smith opined that the husband had taken care of the child when the wife was spending time with him throughout the affair. Robert Charles Lake testified that he had worked with the wife when she was a Kinnucan’s employee. Lake works at Kinnucan’s as a controller. He testified that the wife did not always tell the truth and that he could recall several times when her version of events did not align with his recollection of the same events. Additionally, Travis Scott Denley testified that he had worked in constant contact with the wife while Kinnucan’s employed her. Denley testified that the wife had a strong work ethic but that she was extremely manipulative. He further testified that she had lied about situations and that she was flirtatious with several people at Kinnucan’s. The former coworkers also testified that the wife’s employment at Kinnucan’s had been terminated, but all three refused to testify as to the reasons because of the wife’s claim filed with the Equal Employment Opportunity Commission and the confidential settlement agreement regarding that claim.
The husband and the wife also testified at the trial. The husband opined that it was in the child’s best interest to award him sole physical custody. He testified that the wife focused more on herself and her own materialistic needs than on the needs of the child. He also testified that *419 the wife lies and manipulates. Further, the husband testified that the only assets the parties had were the marital residence, which the husband’s parents had given to the parties as a gift, the wife’s Ford 500 automobile, the husband’s Chevrolet Tahoe automobile, and various items of personal property. The husband testified that the parties had $47,500 of debt in the form of a home-equity line of credit. Further, he testified that the only other marital debt was a credit card with a balance of around $3,000 or $4,000. He opined that his portion of the marital debt was only $12,000. The husband also testified that he had spent $17,000 on legal fees during the pen-dency of the divorce action.
In contrast, the wife testified that she should be awarded sole physical custody. She expressed her desire to care for the child. Further, she admitted to writing checks that were drawn on the home-equity line of credit, which was in the husband’s name. However, she testified that the cheeks were used for normal marital expenses and not her own benefit. She also testified that the Ford 500 automobile she drives was worth approximately $7,000. Additionally, the wife testified that the marital residence had an assessed value of approximately $191,000. The wife also testified that she had sold her home and had contributed the sale proceeds of roughly $20,000 to pay off marital debt and to furnish the marital residence.
After considering all the testimony from the pendente lite hearing and the trial, the trial court entered a judgment divorcing the parties on June 25, 2010. The judgment also granted the parties joint legal custody of the child and awarded sole physical custody of the child to the husband. Further, the wife was ordered to continue paying child support in the amount of $786 per month. The judgment also divided the marital property as follows: the husband was awarded all right, title, and interest in the marital residence; the husband was awarded possession of the Chevrolet Tahoe automobile; the husband was ordered to assume all liability on the home-equity line of credit and the credit card; the wife was awarded possession of the Ford 500 automobile; the wife was ordered to contribute $10,000 to the parties’ marital debts; and the wife was ordered to pay $10,000 toward the husband’s attorney fees.
On July 22, 2010, the wife filed a motion to alter, amend, or vacate the trial court’s judgment. The motion was denied by operation of law. The wife timely appealed to this court.

Issues

The wife raises three issues on appeal: (1) whether the trial court erred in awarding the husband sole physical custody of the minor child; (2) whether the trial court exceeded its discretion in its division of the marital property; and (3) whether the trial court exceeded its discretion in the award of attorney fees.

Standards of Review

“Alabama law gives neither parent priority in an initial custody determination. Ex parte Couch, 521 So.2d 987 (Ala.1988). The controlling consideration in such a case is the best interest of the child. Id. In any case in which the court makes findings of fact based on evidence presented ore tenus, an appellate court will presume that the trial court’s judgment based on those findings is correct, and it will reverse that judgment only if it is found to be plainly and palpably wrong. Ex parte Perkins, 646 So.2d 46 (Ala.1994). The presumption of correctness accorded the trial court’s judgment entered after the court has heard evidence presented ore tenus is especially strong in a child-custody case. Id.”
*420 Ex parte Byars, 794 So.2d 345, 347 (Ala.2001).
“When the trial court fashions a property division following the presentation of ore tenus evidence, its judgment as to that evidence is presumed correct on appeal and will not be reversed absent a showing that the trial court exceeded its discretion or that its decision is plainly and palpably wrong. Roberts v. Roberts, 802 So.2d 230, 235 (Ala.Civ.App.2001); Parrish v. Parrish, 617 So.2d 1036, 1038 (Ala.Civ.App.1993); and Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986). A property division is required to be equitable, not equal, and a determination of what is equitable rests within the broad discretion of the trial court. Parrish, 617 So.2d at 1038.”
Stone v. Stone, 26 So.3d 1232, 1236 (Ala.Civ.App.2009).
“Whether to award an attorney fee in a domestic relations action is a matter within the sound discretion of the trial court and, absent an abuse of that discretion, a trial court’s ruling will not be reversed.” Thompson v. Thompson, 650 So.2d 928, 931 (Ala.Civ.App.1994).

Analysis

I. Custody Determination

The wife argues on appeal that the trial court erred by awarding the husband sole physical custody of the child because, she asserts, evidence admitted at trial established that the wife had been the child’s primary caregiver and awarding her sole physical custody would be in best interest of the child.
“When the trial court makes an initial custody determination, neither party is entitled to a presumption in his or her favor, and the ‘best interest of the child’ standard will generally apply.” Steed v. Steed, 877 So.2d 602, 604 (Ala.Civ.App.2003) (citing Nye v. Nye, 785 So.2d 1147 (Ala.Civ.App.2000)).
“In Ex parte Devine, 398 So.2d 686, 696-97 (Ala.1981), the Alabama Supreme Court set forth a list of factors a trial court may consider in making an initial award of custody based on the best interest of the children, including
“ ‘[t]he sex and age of the children ...; ... the characteristics and needs of each child, including their emotional, social, moral, material and educational needs; the respective home environments offered by the parties; the characteristics of those seeking custody, including age, character, stability, mental and physical health; the capacity and interest of each parent to provide for the emotional, social, moral, material and educational needs of the children; the interpersonal relationship between each child and each parent; the interpersonal relationship between the children; the effect on the child of disrupting or continuing an existing custodial status; the preference of each child, if the child is of sufficient age and maturity; the report and recommendation of any expert witnesses or other independent investigator; available alternatives; and any other relevant matter the evidence may disclose.’ ”
Williams v. Williams, 75 So.3d 132, 139 (Ala.Civ.App.2011).
The wife argues that, because evidence presented at trial established that the wife had been the child’s primary caregiver, she should have been awarded sole physical custody of the child. The wife also highlights the fact that she was the parent responsible for setting up the child’s home environment and keeping the home clean and safe for the child. Further, testimony at trial established that the wife had been the party responsible for placing the child *421 on a routine, which the husband still attempts to follow. Additionally, it was undisputed that the husband failed to attend the mandated parenting class.
Although that evidence could have supported an award of sole physical custody to the wife, the trial court heard other evidence that supported a finding that the best interest of the child would be served by awarding the husband sole physical custody of the child. For example, the wife’s mother opined that the husband should be awarded custody because the wife was “spinning some big tales” and, she believed, the wife’s behavior could eventually affect the child. Further, two of the wife’s former coworkers testified that the wife was known to lie and manipulate. Additionally, the wife testified that the husband was a good parent and that he had the child’s best interest in mind.
Accordingly, we conclude that the portion of the trial court’s judgment awarding the husband sole physical custody of the child is supported by the evidence and is due to be affirmed.

II. Property Division

The wife argues on appeal that the trial court exceeded its discretion in its division of marital property. More specifically, she asserts, the trial court erred in awarding the husband all right, title, and interest in the marital residence. We agree.
“The law is clear that matters such as alimony and property division pursuant to divorce rest soundly within the discretion of the trial court and will not be disturbed on appeal except where such discretion was palpably abused. Montgomery [v. Montgomery, 519 So.2d 525 (Ala.Civ.App.1987) ]. The issues concerning alimony and the division of property are interrelated, and in determining whether the trial court abused its discretion as to either of those issues, the entire judgment must be considered. Montgomery, supra. Many factors, including the conduct of the parties regarding the cause of the divorce, are proper to consider in making an equitable division. Lutz v. Lutz, 485 So.2d 1174 (Ala.Civ.App.1986). The award is not required to be equal, but must be equitable in light of the evidence, and what is equitable rests within the sound discretion of the trial court. Ross [v. Ross, 447 So.2d 812 (Ala.Civ.App.1984) ]. An award that favors one party over the other is not in and of itself an abuse of discretion. Jordan v. Jordan, 547 So.2d 574 (Ala.Civ.App.1989).”
Boykin v. Boykin, 628 So.2d 949, 952 (Ala.Civ.App.1993).
Moreover, this court has stated that
“[t]he factors the trial court should consider in dividing the marital property include ‘the ages and health of the parties, the length of their marriage, their station in life and their future prospects, their standard of living and each party’s potential for maintaining that standard after the divorce, the value and the type of property they own, and the source of their common property.’ Covington v. Covington, 675 So.2d 436, 438 (Ala.Civ.App.1996).”
Courtright v. Courtright, 757 So.2d 453, 456 (Ala.Civ.App.2000). “Also, where there are minor children to sustain and rear, the well-being of the children is an important consideration.” Mack v. Mack, 389 So.2d 1156, 1159 (Ala.Civ.App.1980) (citing Ray v. Ray, 379 So.2d 627 (Ala.Civ.App.1980), and Bailey v. Bailey, 345 So.2d 304 (Ala.Civ.App.1977)). Further, “[i]n examining whether the trial court’s property division amounts to an abuse of its discretion, the proper question to be resolved is whether the property division was equita *422 ble under the facts of the case.” Sumerlin v. Sumerlin, 964 So.2d 47, 49 (Ala.Civ.App.2007) (citing Golden v. Golden, 681 So.2d 605 (Ala.Civ.App.1996)).
The wife argues that the trial court erred in awarding the husband all right, title, and interest in the marital residence because the marital residence was a gift to the couple from the husband’s parents. The husband’s parents deeded the marital residence to the parties as joint tenants with the right of survivorship. It was undisputed that the husband’s parents gave the parties the marital residence as a gift, during the course of the marriage.
The trial court’s judgment does not indicate its reasons for awarding the husband all right, title, and interest in the marital residence. However, the husband’s brief to this court indicates that awarding any interest in the marital residence to the wife would give her a “windfall” from a gift that was intended for the parties to use only as a marital home. Further, the husband’s brief draws parallels to the supreme court’s decision in Ex parte Bland, 796 So.2d 340 (Ala.2000). In Ex parte Bland, our supreme court reversed a decision of this court, which had reversed a trial court’s property division,[1] because this court had concluded that funds inherited by the husband were used for the common benefit of the parties and, therefore, that, pursuant to § 30-2-51 (a), Ala. Code 1975, those funds were to be divided between the parties. Bland v. Bland, 796 So.2d 335 (Ala.Civ.App.1999). Thus, Ex parte Bland focuses on inherited funds, which were part of the husband’s separate estate, that were used for the common benefit of the parties and whether, under the facts of that case, the trial court should have equally divided those funds. However, this case is unlike Ex parte Bland because it does not involve any inherited property or require application of § 30-2-51(a), Ala.Code 1975; instead, this case involves a gift to the parties jointly during the course of their marriage. Therefore, the husband’s emphasis on Ex parte Bland is misplaced.
Essentially, in this case, the trial court divided the marital debt and awarded the only substantial marital asset, the marital residence, to the husband, although it was undisputed that the marital residence was a gift to both parties. In light of the fact that this asset was a gift given to the parties during the course of the marriage, we agree with the wife that the trial court erred in awarding the husband all right, title, and interest in the marital residence. See Mayhann v. Mayhann, 820 So.2d 836, 839 (Ala.Civ.App.2001) (reversing a property division because the award of property was inequitable and left the wife nothing but an automobile, a bedroom suite, and cookware and china); Stewart v. Stewart, 62 So.3d 523, 530 (Ala.Civ.App.2010) (reversing a property division because the inequitable distribution of assets, in comparison to marital debts, left the wife with nothing from the distribution); and Childree v. Childree, 831 So.2d 635, 639 (Ala.Civ.App.2002) (holding that the inequity of the property division and alimony award required reversal).
The evidence concerning the value of the marital property indicated that the marital residence had an assessed value of $191,000 and, based on the wife’s testimony, that the value of the Ford 500 automobile was approximately $7,000. There was no testimony as to the value of the Chevro *423 let Tahoe or the value of the parties’ personal property. The evidence submitted at trial established that the marital debt totaled approximately $51,000 and that the debt was in the form of a home-equity line of credit with a balance of $47,500 and a credit card with a $3,000 to $4,000 balance. Therefore, the marital home was the only substantial asset of the marriage. The husband was awarded all right, title, and interest in the marital residence worth approximately $191,000. Additionally, the husband was ordered to assume roughly $40,000 in debt. In contrast, the wife was awarded an automobile worth $7,000 and was required to take on $10,000 in debt. This award of assets cannot be considered equitable under the circumstances of this case, even in light of the wife’s admitted extramarital affair.
We conclude that we must reverse the trial court’s property division because of the inequity of the award. On remand, the trial court is instructed to adjust the property division as it considers appropriate in light of the fact that the marital residence was a gift to both parties and, thus, was marital property and not the sole property of the husband.

III. Attorney Fees

Finally, the wife argues that, considering the relatively equal incomes of the parties, and the lack of testimony regarding the husband’s need for an award of an attorney fee, the trial court erred in its attorney-fee award of $10,000 to the husband. It is without question that the trial court has wide discretion in awarding attorney fees to parties in a divorce proceeding. Hansen v. Hansen, 401 So.2d 105, 107 (Ala.Civ.App.1981).
“Whether to award an attorney fee in a domestic relations case is within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling on that question will not be reversed. Thompson v. Thompson, 650 So.2d 928 (Ala.Civ.App.1994). ‘Factors to be considered by the trial court when awarding such fees include the financial circumstances of the parties, the parties’ conduct, the results of the litigation, and, where appropriate, the trial court’s knowledge and experience as to the value of the services performed by the attorney.’ Figures v. Figures, 624 So.2d 188, 191 (Ala.Civ.App.1993). Additionally, a trial court is presumed to have knowledge from which it may set a reasonable attorney fee even when there is no evidence as to the reasonableness of the attorney fee. Taylor v. Taylor, 486 So.2d 1294 (Ala.Civ.App.1986).”
Glover v. Glover, 678 So.2d 174, 176 (Ala.Civ.App.1996).
We pretermit discussion of the husband’s $10,000 attorney-fee award. In this case, the results of the litigation are undetermined because this court has reversed the property division and remanded the case for further consideration. Thus, the outcome of the litigation and the financial obligations of the parties are dependent on the trial court’s actions on remand. Accordingly, we reverse the attorney-fee award and direct the trial court to further evaluate this issue.

Conclusion

Accordingly, we affirm the judgment of the trial court insofar as it awarded the husband sole physical custody of the child; we reverse the judgment of the trial court insofar as it awarded the husband all right, title, and interest in the marital residence, divided the parties’ marital debts, and awarded the husband $10,000 in attorney fees; and we remand the cause to the trial court with instructions to reconsider the property division and attorney-fee award.
*424 The husband requests the award of an attorney fee on appeal. We deny the husband’s request.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.
BRYAN, J., concurs in part and concurs in the result, with writing.

. The trial court had ordered that the marital home be sold and that the husband be awarded the first $76,000 of the proceeds from the sale, with the remaining proceeds to be split equally between the parties, because the husband had contributed $76,000 of his inheritance to purchase the home. Ex parte Bland, 796 So.2d at 344.