BRYAN, Judge.
Allen Lee, Jr. (“the husband”), appeals from a judgment entered by the Monroe Circuit Court (“the trial court”) that divorced him from Geraldine Lee (“the wife”) insofar as it divided the parties’ property and awarded the wife permanent periodic alimony.
On January 7, 2009, the wife filed a complaint for a divorce seeking a divorce from the husband on the ground of incompatibility of temperament. She sought an equitable division of the parties’ marital property and debts, an award of alimony, and an award of attorney fees, among other things.[1] The husband subsequently filed an answer to the wife’s complaint and a counterclaim for a divorce.
The trial court conducted an ore tenus hearing on May 10, 2010, and the husband and the wife were the only witnesses to testify. The parties stipulated that they had been married for 31 years; that a divorce should be granted on the ground of incompatibility of temperament; that they had agreed to the division of their personal property, except for one mobile home; and that the only issues before the trial court were the division of real property, the division of the mobile home, and the wife’s request for alimony.
At the time of the final hearing, the husband and the wife were both living in the parties’ marital residence. The parties stipulated that the marital residence was worth $68,060 and that there was a mortgage secured by the marital residence in the amount of $33,217.43. The monthly mortgage payment totaled $463.70. The record indicates that a storage building behind the marital residence had caught on fire and that the parties’ insurance company had agreed to pay the parties approximately $14,000 on their claim relating to the damage to that building. The parties also owned real property in Beatrice, and they stipulated that the value of that property was $15,690. The parties owned a mobile home that was located in Frisco City that was valued at $3,000; however, there was a lien on the mobile home in the amount of $6,000, and the *65 monthly payment on the mobile home was $422.
The wife stated that she had a high-school diploma, that she worked outside the home throughout the marriage, and that, in May 2009, she became a board-certified nursing assistant after attending Reid State Technical College for six months. According to the wife, in 2007 she earned $12,500, in 2008 she earned $13,000, and in 2009 she earned $16,800 (approximately $1,400 a month). The wife stated that she did not know how much the husband had earned each year that they had been married because they had filed separate income-tax returns. However, she stated that the husband had paid the majority of the household bills, including her monthly automobile payment, but that she had paid the water, gas, and electric utility bills. The wife estimated that her monthly expenses totaled $2,347, not including the monthly mortgage payment on the marital residence. At the time of the hearing, the husband was paying the monthly mortgage debt on the marital residence. The wife stated that she wanted to be awarded the marital residence and that she wanted the husband to continue paying the mortgage debt on the marital residence. The wife requested an award of permanent periodic alimony in the event that the trial court awarded her the marital residence and did not require the husband to pay the mortgage debt on the marital residence.
The record indicates that the husband owned and operated a construction company and that he had done so for approximately 13 years. According to the husband, in 2006, the husband’s business had adjusted gross income totaling $8,333.08; in 2007, the husband’s adjusted gross income was $4,226 and the adjusted gross income of his business and the parties’ store, discussed infra, was $3,402. The husband stated that he did not file an income-tax return in 2008 because he did not earn enough income to pay any taxes in 2008. The husband testified that his income in 2009 totaled $12,452.[2] The husband stated that he had gotten behind on the mortgage-debt payments in 2008 and that he had struggled to pay all the parties’ financial obligations.
Regarding the husband’s construction company, the wife stated that the husband had always had a lot of work and that there had never been a time during the parties’ marriage that the husband had been without funds to pay the parties’ bills. According to the wife, she had seen the husband carrying large sums of cash, and she stated that the husband had given her cash whenever she told him that she needed something. The wife presented evidence indicating that the husband had deposited $134,800 into his checking account from March 2009 through December 2009, but there is no indication in the record of what amount of money the husband took out of his account to pay expenses related to the receipt of that income.[3]
The wife stated that she was willing to allow the husband to be awarded his business and his tools. The record indicated that the husband had two trucks associated with the operation of his business, but neither party presented any evidence regarding the value of the trucks or the tools related to the husband’s business. The husband stated that he had credit-card debt, and he indicated that that debt was *66 related to the his business expenses. However, when the wife’s attorney specifically asked the husband if his credit-card debt was related to his business expenses, the following exchange occurred:
“THE COURT: There is no claim that [the husband’s construction company] is marital property. Is that what I was reading?
“[The wife’s attorney]: No claim to [the husband]’s business.
“THE COURT: Let’s keep going.”
The wife’s attorney did not ask the husband any more questions about his business-related debt. Later during the husband’s testimony, the husband’s attorney asked the husband about his business-related debts, and the wife’s attorney objected. The trial court sustained the objection but qualified the ruling by stating: “Unless we can say that [the husband’s construction company] is marital property.” The husband’s attorney stated that the husband was the sole proprietor of the construction company, and the trial court responded:
“It is going to be one way or the other. It is either a family business or it is not. If [the construction company] is a marital asset, then I will divide those assets and the trucks and the tools and everything else, then I will consider the debts that are for that business. Right now there is no claim for that. It has to be one way or the other.”
No further evidence was presented by either party concerning the debts related to the husband’s business, and there was no evidence presented by either party concerning the value of the husband’s business.
The parties purchased a store, Mexia Supermarket, in 2006 for $50,000.[4] The wife stated that she and the husband subsequently took out a $30,000 mortgage on the marital residence and that the husband had told her the money would be used to pay for expenses he had incurred through his business to get the store started. The wife stated that she ran the store and that she incurred credit-card debt related to the operation of the store. At the time of the hearing, the wife’s credit-card debt related to the operation of the store totaled $7,300. She stated that the store closed in September 2008 and that the husband had claimed the business losses related to the store — approximately $75,000.[5]
The husband, who was 48 years old, testified that he had recently been diagnosed with rheumatoid arthritis and that it affected his business because he could not get around. According to the husband, his doctor had told him that he probably would not be able to work in five years.
On September 1, 2010, the trial court entered a judgment divorcing the parties on the ground of incompatibility of temperament. The wife was awarded the marital residence, the personal property in her possession, and 60% of the insurance proceeds from the fire damage to the parties’ storage building. The wife was ordered to pay the credit-card debt in her name. The husband was awarded his construction business, two trucks associated with his business, the real property in Beatrice, the mobile home, the personal property in his possession, and 50% of the insurance proceeds from the fire damage to the parties’ storage building. The husband was or *67 dered to pay the credit-card debt in his name, the mortgage on the marital residence, and the debt on the mobile home. In addition, the husband was required to pay the wife $500 a month in permanent periodic alimony.
On September 30, 2010, the husband filed a postjudgment motion pursuant to Rule 59, Ala. R. Civ. P., and the trial court subsequently denied the husband’s motion. The husband timely filed a notice of appeal.
On appeal, the husband argues that the trial court’s division of property and award of alimony is inequitable and that the divorce judgment is therefore due to be reversed. Regarding those issues, this court has held:
“ ‘The law is clear that matters such as alimony and property division pursuant to divorce rest soundly within the discretion of the trial court and will not be disturbed on appeal except where such discretion was palpably abused. Montgomery [v. Montgomery, 519 So.2d 525 (Ala.Civ.App. 1987) ]. The issues concerning alimony and the division of property are interrelated, and in determining whether the trial court abused its discretion as to either of those issues, the entire judgment must be considered. Montgomery, supra. Many factors, including the conduct of the parties regarding the cause of the divorce, are proper to consider in making an equitable division. Lutz v. Lutz, 485 So.2d 1174 (Ala.Civ.App.1986). The award is not required to be equal, but must be equitable in light of the evidence, and what is equitable rests within the sound discretion of the trial court. Ross [v. Ross, 447 So.2d 812 (Ala.Civ. App.1984) ]. An award that favors one party over the other is not in and of itself an abuse of discretion. Jordan v. Jordan, 547 So.2d 574 (Ala. Civ. App.1989).’
“Boykin v. Boykin, 628 So.2d 949, 952 (Ala.Civ.App.1998).
“Moreover, this court has stated that “ ‘[t]he factors the trial court should consider in dividing the marital property include “the ages and health of the parties, the length of their marriage, their station in life and their future prospects, their standard of living and each party’s potential for maintaining that standard after the divorce, the value and the type of property they own, and the source of their common property.” Covington v. Covington, 675 So.2d 436, 438 (Ala. Civ.App.1996).’
“Courtright v. Courtright, 757 So.2d 453, 456 (Ala.Civ.App.2000).... Further, ‘[i]n examining whether the trial court’s property division amounts to an abuse of its discretion, the proper question to be resolved is whether the property division was equitable under the facts of the case.’ Sumerlin v. Sumerlin, 964 So.2d 47, 49 (Ala.Civ.App.2007) (citing Golden v. Golden, 681 So.2d 605 (Ala.Civ.App. 1996)).”
Martin v. Martin, 85 So.3d 414, 421-22 (Ala.Civ.App.2011).
Furthermore, this court’s standard of reviewing a judgment entered after the presentation of ore tenus evidence is well settled:
“ ‘[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.’ Philpot v. State, 843 So.2d 122, 125 (Ala. 2002). ‘ “The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evi *68 dence presented to the trial court to sustain its judgment.” ’ Wattman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005) (quoting Dennis v. Dobbs,, 474 So.2d 77, 79 (Ala.1985)).”
Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005).
The value of the majority of the property awarded to the parties was undisputed. However, our review of the record reveals some confusion about whether the parties contended that the husband’s business was marital property. Neither party directly stated on the record whether they believed the business, which produced income that was used to support the parties’ household during the marriage, was marital property. Our review of the record indicates that the trial court, based on its understanding of the parties’ positions, did not consider the husband’s business to be marital property, despite the fact that the trial court specifically awarded the husband his business and two trucks related to his business in the divorce judgment. Regardless, even if the trial court considered the husband’s business to be marital property, there was no evidence presented regarding the value of the husband’s business, including any assets owned by the business.
Considering the undisputed evidence presented during the ore tenus hearing, the wife was awarded assets totaling approximately $75,060 ($68,060 marital residence + $7,000 insurance proceeds), and she was ordered to pay her credit-card debt, which totaled $7,300, for a total property award equal to $67,760. In addition, the wife was awarded $500 a month in periodic alimony, or approximately $6,000 in alimony each year.
On the other hand, the husband was awarded assets totaling $25,690 ($15,690 for Beatrice property + $3,000 for mobile home + $7,000 in insurance proceeds), and he was ordered to pay marital debts totaling approximately $39,217 ($33,217 mortgage, on marital residence 4- $6,000 lien on mobile home). Thus, the value of the husband’s - property award totaled -$13,527. As stated above, the husband was also awarded his business, tools, and two trucks related to his business, but no evidence was presented regarding the value of any of those items.
The record revealed that the parties had been married for 31 years, and there was no evidence presented that indicated that the misconduct of either party contributed to the breakdown of the marriage. The wife’s age is not set forth in the transcript from the final hearing, but the record indicates that the husband was 48 years old and that he had recently been diagnosed with rheumatoid arthritis. Although the trial court could have concluded that, at the time of trial, the husband had a greater earning capacity than the wife, the husband presented undisputed evidence .indicating that his future earning capacity was likely to be diminished as a result of his arthritis diagnosis. On the other hand, the wife had recently been certified as a nursing assistant and the record indicates that she had begun earning more income in 2009 than she had in the two years before she filed for a divorce. Furthermore, there was no evidence presented indicating that the wife had any health problems or that her future earning capacity would be diminished in any way.
In Marlin v. Martin, this court reversed a divorce judgment insofar as it divided the parties’ marital property and debts because, we found, the award was inequitable and constituted an abuse of discretion. 85 So.3d at 423. In that case, the husband was awarded the parties’ marital residence, which was valued at $191,000, and was ordered to assume approximately $40,000 in marital debt. Id. at 419. The *69 wife, on the other hand, was awarded an automobile worth $7,000, but she was ordered to assume debt in the amount of $10,000. Id. at 419. We held that such an award was inequitable even in light of the fact that the wife had admitted to having had an extramarital affair. Id. at 423.
We conclude that the trial court’s division of property and award of alimony in the present case is inequitable. Certainly, a division of property may favor one party over the other, but, in this case, we find no evidence to support such a disproportionate division of property. See Stewart v. Stewart, 62 So.3d 523, 530 (Ala.Civ.App. 2010) (concluding that the division of property in a divorce judgment was inequitable when the husband was awarded $46,000 in marital property, in addition to his separate estate, and the wife was “essentially awarded nothing”). Therefore, we reverse the trial court’s judgment insofar as it divided the parties’ marital property and awarded the wife $500 a month in periodic alimony. We remand the cause with instructions to the trial court to adjust the division of property and the award of alimony in a manner it deems appropriate in order to award the husband an equitable share of the parties’ marital estate.
REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN, THOMAS, and MOORE, JJ., concur.
THOMPSON, P.J., dissents, without writing.

. At the time the wife filed her complaint for a divorce, the parties had one minor child; however, that child had attained the age of majority by the date of the final hearing.

. We note that neither party offered the husband’s income-tax returns into evidence, and they do not appear in the record on appeal.

. The husband testified that he had paid labor and materials costs related to his business from the funds deposited into his checking account.

. There is no indication in the record of the source of the payment for the Mexia Supermarket.

. The record indicates that the husband had filed a single income-tax return for his business and the store while the store was in operation and that the wife had always filed a separate income-tax return.