Gayle Ozbirn Byars ("the mother") appealed to the Court of Civil Appeals from a divorce judgment in which the trial court had awarded custody of the parties' child to her husband, James Stratt Byars III ("the father"). The Court of Civil Appeals, on July 30, 1999, affirmed the judgment, without an opinion. Byars v. Byars (No. 2980342),781 So.2d 1024 (Ala.Civ.App. 1999) (table). We granted the mother's petition for certiorari review. We affirm.
The parties were married in September 1986. They had one child, a son, who was born on September 17, 1990. The parties began divorce proceedings in March 1998. Both of them requested sole custody of the child. The trial court divorced the parties in August 1998, awarding custody of the child to the father and visitation rights to the mother. The mother filed a postjudgment motion in which she alleged, among other things, that the trial court had erred in failing to consider an award of joint custody. The trial court granted her motion to the extent that it corrected certain errors in the divorce judgment, but it did not change any portion of the custody or visitation awards.
The record indicates that both parties are caring, loving, attentive parents who are committed to their child and who are actively involved in his life. At the time of the divorce, the parties lived near Russellville on a farm that has been in the father's family for five generations. The father is employed by the family farm, and his parents live in the Russellville area. The mother is employed in Florence, where her parents live. She planned to move back to Florence after the divorce. The record indicated that all four grandparents also love the child and are involved in his life. However, the mother wanted the child to live with her in Florence and to attend a private school there, while the *Page 347 
father wanted the child to live with him in the Russellville area and to attend a public school there.
Alabama law gives neither parent priority in an initial custody determination. Ex parte Couch, 521 So.2d 1987 (Ala. 1988). The controlling consideration in such a case is the best interest of the child. Id. In any case in which the court makes findings of fact based on evidence presented ore tenus, an appellate court will presume that the trial court's judgment based on those findings is correct, and it will reverse that judgment only if it is found to be plainly and palpably wrong. Ex parte Perkins, 646 So.2d 46 (Ala. 1994). The presumption of correctness accorded the trial court's judgment entered after the court has heard evidence presented ore tenus is especially strong in a child-custody case. Id. The record is replete with evidence indicating that an award of custody to either of these parties would have been appropriate. Nevertheless, the trial judge, who saw and heard the parties, their parents, and several other witnesses testify, decided to award custody of the child to the father. We cannot say that decision is plainly and palpably wrong.
In her petition for a writ of certiorari, the mother argued that this case presents a question of first impression because this Court has never considered the extent to which a trial court has the discretion to reject joint custody in a case in which, according to the mother, the evidence is undisputed "as to the fitness of both parents and the ability of the parents to implement a joint-custody arrangement to the benefit of their child." The mother refers to §§ 30-3-150 to -157, Ala. Code 1975; those Code sections are taken from a 1996 statute concerning joint custody. These sections became effective on January 1, 1997.
Section 30-3-150 expresses the State's policy on the issue of joint custody:
 "It is the policy of this state to assure that minor children have frequent and continuing contact with parents who have shown the ability to act in the best interest of their children and to encourage parents to share in the rights and responsibilities of rearing their children after the parents have separated or dissolved their marriage. Joint custody does not necessarily mean equal physical custody."
Section 30-3-151(1) defines "joint custody" as "[j]oint legal custody and joint physical custody." When parents are awarded "joint legal custody," they have "equal rights and responsibilities for major decisions concerning the child, including, but not limited to, the education of the child, health care, and religious training." § 30-3-151(2). When parents are awarded "joint physical custody," they share physical custody of the child "in a way that assures the child frequent and substantial contact with each parent." § 30-3-151(3).
Section 30-3-152 lists the factors a trial court must consider in a custody case:
 "(a) The court shall in every case consider joint custody but may award any form of custody which is determined to be in the best interest of the child. In determining whether joint custody is in the best interest of the child, the court shall consider the same factors considered in awarding sole legal and physical custody and all of the following factors:
 "(1) The agreement or lack of agreement of the parents on joint custody.
 "(2) The past and present ability of the parents to cooperate with each other and make decisions jointly.
 "(3) The ability of the parents to encourage the sharing of love, affection, and contact between the child and the other parent. *Page 348 
 "(4) Any history of or potential for child abuse, spouse abuse, or kidnapping.
 "(5) The geographic proximity of the parents to each other as this relates to the practical considerations of joint physical custody.
 "(b) The court may order a form of joint custody without the consent of both parents, when it is in the best interest of the child.
 "(c) If both parents request joint custody, the presumption is that joint custody is in the best interest of the child. Joint custody shall be granted in the final order of the court unless the court makes specific findings as to why joint custody is not granted."
The mother asks this Court to "expound upon the extent of the permissible discretion of a trial court to reject joint custody where it is undisputed that both parents were tremendously devoted to the child and demonstrated an ability to work together for the child's best interests." The record is abundantly clear that both parents are devoted to the child. However, in his response to the mother's petition for the writ of certiorari, the father disputes her contention that the parties would be able to implement a joint-custody arrangement. The father also notes that the mother did not request joint custody until after the trial court had already decided to award the custody of the child to the father. The mother points out that the statute specifically allows a trial court to award joint custody even if the parties do not consent to it, if such an award is in the child's best interest. See §30-3-152(b).
The mother correctly argues that the trial court is required by §30-3-152(a) to consider joint custody in every case. Immediately after imposing that requirement, however, the statute reaffirms the trial court's discretion to award "any form of custody," so long as the custody award is in the best interest of the child. The statutes do not require a trial court to state in its judgment that it has considered and has rejected joint custody, or to state its reasons for rejecting it. Only if a trial court rejects a joint-custody award requested by both parties is it required under § 30-3-152(c) to make specific findings. That is not the situation presented in this case. Neither party requested joint custody initially, and only the mother requested joint custody in the postjudgment proceedings.
The Court of Civil Appeals has discussed §§ 30-3-152 in two cases that presented issues similar to the issue presented to us here. InDuBois v. DuBois, 714 So.2d 308 (Ala.Civ.App. 1998), the mother requested sole custody of two children and the father requested joint custody. The trial court awarded custody to the mother. On appeal, the father argued that joint custody was presumed to be in the best interest of the children and that the trial court should have stated its reasons for not awarding joint custody. The Court of Civil Appeals pointed out that joint custody is presumed to be in a child's best interest only if both parents request joint custody. The mother in this present case attempts to distinguish DuBois, because in DuBois the Court of Civil Appeals stated that it appeared from the trial transcript that the parties did not have an "amicable relationship" and that it was unlikely that they could cooperate and make joint decisions. 714 So.2d at 309. The mother insists that joint custody in this present case is workable, but, as we have already stated, the father disagrees with her.
In McGough v. McGough, 710 So.2d 452 (Ala.Civ.App. 1997), the trial court awarded custody of the parties' children to the mother. The father argued on appeal that the trial court had failed to consider joint custody, because the court did not indicate *Page 349 
in its judgment or anywhere else in the record that it had considered the factors enumerated in § 30-3-152(a). Without some reference to those factors, the father argued, it was not possible to determine whether the trial court had complied with the statute. The Court of Civil Appeals stated:
 "It would be better practice for the trial court to indicate that it considered the five factors set out in the statute. Such a practice would enable the appellate court reviewing a case to be certain that the trial court complied with the statute. However, nothing in the statute requires the trial court to do so."
710 So.2d at 454. We agree with the Court of Civil Appeals that it would be the better practice for a trial court to state in its judgment that it has considered the five factors enumerated in § 30-3-152(a) and to explain why it awarded, or rejected, joint custody. Such a practice would indeed be helpful to an appellate court called upon to review a custody award. We also agree with the Court of Civil Appeals, however, that the statute does not require the trial court to make any specific findings unless both parties have requested joint custody but the court is not ordering joint custody. The Legislature, by enacting § 30-3-152(c), has demonstrated an ability to require a statement of reasons, and by enacting that statute it has done so in a situation not here presented. We must conclude that if the Legislature had intended to require the trial court to state its reasons in other situations, it would have done so. See Swift v. Gregory, 786 So.2d 1097 (Ala. 2000).
The trial court made no findings of fact regarding joint custody when it denied the mother's postjudgment motion insofar as it related to the custody order. When a trial court does not make specific findings of fact concerning a particular issue, an appellate court will assume that the trial court made those findings that would have been necessary to support its judgment, unless those findings would be clearly erroneous. Ex parteBryowsky, 676 So.2d 1322 (Ala. 1996). After reviewing the evidence in this case, particularly the testimony regarding the parties' disagreement concerning where the child would attend school, we cannot say that the trial court's decision to award custody to the father, rather than to award joint custody, was clearly erroneous. Therefore, it is not necessary in this case for us to "expound" upon the trial court's discretion to reject joint custody, and we must decline the mother's request that we do so. The trial court clearly had the discretion to reject joint custody, under the circumstances presented by this case. The Court of Civil Appeals properly affirmed the judgment of the trial court; we affirm the judgment of the Court of Civil Appeals.
The mother has requested an attorney fee; her request is denied.
AFFIRMED.
Moore, C.J., and Houston, See, Brown, Johnstone, Harwood, Woodall, and Stuart, JJ., concur.