[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 936 
W. Randall Mullis ("the father") and Lynda Marie Mullis ("the mother") were married on June 25, 1995. Two children were born of the parties' relationship; at the time of the final hearing in this matter, the children were ages 14 and 8. On February 18, 2005, after almost 10 years of marriage, the father filed a complaint for divorce seeking custody of the parties' children. The mother answered and filed a counterclaim for divorce in which she also sought custody of the children. Contemporaneously with their respective complaints for divorce, the father and the mother both filed motions seeking temporary custody of the children. Following an ore tenus hearing on June 7, 2005, the trial court entered an order on June 14, 2005, awarding temporary custody of the children to the father and awarding the father temporary, exclusive possession of the marital home.
On June 24, 2005, the mother filed a motion to reconsider or, in the alternative, for visitation with the children. Before the conclusion of an ore tenus hearing on the mother's June 24, 2005, motion to reconsider, the parties reached an agreement wherein the children would remain in the temporary custody of the father and the mother would receive visitation with the children. The visitation provision of the agreement provided, among other things, that the mother would receive visitation with the children on alternating weekends and during the week from 5:00 p.m. on Wednesday to 8:00 a.m. on Thursday. The parties further agreed that the father would pay the mother $600 a month to be applied to her rent. The trial court entered an order on August 15, 2005, in which it adopted the agreement reached by the parties.
On March 24, 2006, and July 7, 2006, the trial court held a hearing on the parties' respective complaints for a divorce and received ore tenus evidence. On August 8, 2006, the trial court entered a final judgment divorcing the parties, awarding the father custody of the parties' children, awarding the mother periodic alimony, and fashioning a property division. The mother timely appealed.
When a trial court receives ore tenus evidence, its judgment based on that evidence is entitled to a presumption of correctness on appeal and will not be reversed absent a showing that the trial court exceeded its discretion or that the judgment is so unsupported by the evidence as to be plainly and palpably wrong. Scholl v. Parsons, 655 So.2d 1060
(Ala.Civ.App. 1995). "Th[is] presumption of correctness is based in part on the trial *Page 937 
court's unique ability to observe the parties and the witnesses and to evaluate their credibility and demeanor."Littleton v. Littleton, 741 So.2d 1083, 1085
(Ala.Civ.App. 1999). The trial court's ability to observe witnesses is particularly important in child-custody cases. Ex parteFann, 810 So.2d 631, 633 (Ala. 2001) (quoting Williamsv. Williams, 402 So.2d 1029, 1032 (Ala.Civ.App. 1981))(" `In child custody cases especially, the perception of an attentive trial judge is of great importance.'"). This court is not permitted to reweigh the evidence on appeal and substitute its judgment for that of the trial court. Somers v.McCoy, 777 So.2d 141 (Ala.Civ.App. 2000).
The trial court conducted several ore tenus hearings in this case. The testimony and documentary evidence from those hearings revealed the following pertinent facts. At the time of the final hearing in this matter, the father was 43 years old and the mother was 53 years old. This is the mother's second marriage. The mother has four children from her previous marriage, but she does not have custody of those children. The father has one child with special needs from a previous marriage, but he does not have custody of that child.
The parties separated in November 2003 when the father moved out of the marital home. The father returned to the marital home approximately three weeks after the trial court awarded him temporary custody of the children and possession of the marital home on June 14, 2005. The father testified that when he returned to the house he discovered that the mother had left the house in a filthy condition. The father submitted numerous photographs into evidence at trial depicting an unkempt house with trash strewn and clothes piled on the floor. The mother denied leaving the house in the condition as depicted in the pictures admitted into evidence. The mother claimed that she kept the house clean while she had custody of the children.
The father testified that he also found marijuana and numerous prescription pills loose in the house when he was cleaning the house. The father explained that he took the pills he found to a pharmacist and learned that the pills were "uppers" of various kinds. The father submitted as evidence a bottle containing various types of pills and what appears to be stems of marijuana the father found while cleaning the marital home.
The father and the mother both admitted to abusing illegal drugs in the past. The record revealed that the father had been convicted in 1997 for possession of marijuana. The father testified that he had previously abused methamphetamine and marijuana but that he had stopped abusing drugs several years before the final hearing in this case. According to the father, the mother continued to smoke marijuana. The mother testified that she and the father used to smoke marijuana together, but she testified that she no longer smokes marijuana. The mother denied having a drug problem. The mother testified that she had consistently tested negative for drugs on drug screens administered to her after the initial hearings were held in the case.
The record reveals that the evening before the June 7, 2005, temporary hearing, the mother was arrested and charged with possession of a controlled substance. According to her testimony, the mother was arrested two blocks from the marital home with Xanax, a prescription drug, in her possession. At the time the mother was arrested, she did not have a prescription in her name for Xanax. The mother explained that she had had a prescription for the Xanax found in her possession but that her prescription had expired. The mother *Page 938 
later pleaded guilty to a lesser charge of illegal possession of a prescription drug and was sentenced to two years' probation.
The father testified that the mother did not consistently exercise visitation with the children after he received temporary custody of the children in June 2005. According to the father, the mother frequently declined to exercise overnight visitation with the children on Wednesdays and missed several scheduled weekend visitations. The mother testified that the father made it difficult for her to exercise visitation with the children and, at times, refused to allow her to visit with the children. According to the mother, she did not consistently exercise overnight visitation with the children on Wednesdays because she thought it best for the children to wake up in their own beds during the school week. The mother testified that she missed visitation one weekend in August 2005 because of a mandatory evacuation for Hurricane Katrina. The mother testified that she had not paid child support to the father since the father received temporary custody of the children.
The father testified that the mother had moved four times during the year preceding the final hearing in this case and that he did not know where the mother was living at the time of the final hearing. Testimony presented over the course of several ore tenus hearings held in this case revealed that the mother had moved several times. At the time of the final hearing, the mother was living with her friend, Jill Richburg, and Richburg's two children. The mother testified that she paid Richburg $200 a week for rent.
Testimony revealed that the mother worked outside and inside the home during the parties' marriage. The mother testified that when she was not employed as a preschool teacher, she worked at home and handled all of the telephone calls for the father's plumbing business. The mother testified that she began substitute teaching at a private school in 1994 and worked there for approximately 10 years. The mother testified that her employment at the school guaranteed that the children could attend the school without paying tuition. After leaving her employment at the school, the mother worked for a child-development center, but she was fired from that job in March 2006. The mother testified at the final hearing that she had a full-time job working 40 to 48 hours a week, earning $9 per hour. The mother listed her gross monthly income as $1,560 in her CS-41 child-support income affidavit filed in the trial court.
The father is a self-employed plumber and owns Coastal Plumbing and Heating. The father testified that he charges $78.50 an hour but that he typically performs contract work and is paid a flat rate for his services. The father testified that his gross monthly income, including rental income he receives from commercial property and residential property he owns, is $3,700 a month. The father testified that after he pays expenses associated with the rental properties, his monthly income is reduced to approximately $1,700.
The parties purchased their marital home in December 2000. The father testified that the martial home had been appraised for $230,000. The father testified that $100,000 of mortgage indebtedness remains on the marital home. The father testified that the monthly mortgage payment on the marital home was $947.
In addition to the marital home, the parties own real property located on Fort Morgan Road in Gulf Shores (hereinafter "the Fort Morgan property"). The father testified that a commercial building, a rental house, and the shop for his plumbing business all sit on the Fort Morgan property. The father estimated the total *Page 939 
value of the Fort Morgan property to be $300,000. The father testified that the Fort Morgan property was subject to mortgage indebtedness of $197,000 and that his monthly mortgage payment on the property was $1,422.44.
The trial court heard limited testimony regarding other marital assets. The mother testified that the father left her a 1995 GMC Jimmy to drive after the parties' separation. The father testified that he owned the vehicle. No value was given for the vehicle, but the mother testified that the vehicle was inoperable and had been inoperable for some time. At the time of the final hearing, the father had the vehicle in his possession. The father and the mother both presented testimony from character witnesses who testified in favor of their respective abilities to parent the children.
In its August 8, 2006, judgment divorcing the parties, the trial court awarded the father custody of the children and ordered the mother to pay monthly child support in the amount of $307. The trial court ordered the father to pay the mother $600 a month in periodic alimony but reduced that amount by the mother's $307 child-support obligation, for a total obligation of $293 a month. The trial court further ordered the father to pay the mother $2,500 to help the mother purchase a vehicle. The trial court awarded the father the marital home, the rental house, and the business property. The trial court ordered the father to pay the mother $40,000 in alimony in gross.
The mother contends that the trial court's property division is inequitable. Specifically, the mother argues that the trial court erred by awarding the father all of the real property owned by the parties while only awarding her $40,000 for her interest in the property. Because issues of alimony and property division are interrelated, we must review those issues together on appeal. Marshall v. Marshall,891 So.2d 883, 888 (Ala.Civ.App. 2004). In reviewing a trial court's division of marital property and award of alimony, this court has stated:
 "The trial court's judgment on . . . issues [of property division and alimony] will not be reversed absent a finding that the judgment is so unsupported by the evidence as to amount to an abuse of discretion. The property division need not be equal, but it must be equitable. The factors the trial court should consider in dividing the marital property include `the ages and health of the parties, the length of their marriage, their station in life and their future prospects, their standard of living and each party's potential for maintaining that standard after the divorce, the value and type of property they own, and the source of their common property.' Covington v. Covington, 675 So.2d 436, 438
(Ala.Civ.App. 1996)."
Courtright v. Courtright, 757 So.2d 453, 456
(Ala.Civ.App. 2000) (some citations omitted).
The parties were married for almost 10 years. The father was 43 years old and the mother was 53 years old at the time of the final hearing. The record does not reveal the status of the parties' health. The father and the mother are both employed. The father owns his own plumbing business, and, although it is unclear from the record how much income he earns from his plumbing business, the father represented to the trial court that he earned $3,700 a month in gross income. The mother earns $1,560 in gross monthly income.
The parties offered limited testimony regarding the assets acquired during the marriage. The testimony presented at trial *Page 940 
revealed that the parties owned real property worth $530,000 but that the property was subject to mortgage indebtedness in the amount of $297,000. Other than the parties' real property, the parties presented no evidence regarding the value of any other marital assets.
Pursuant to the trial court's divorce judgment, the father received the marital home and the Fort Morgan property with a total value of $233,000 after subtracting the mortgage indebtedness on the properties. The trial court awarded the mother $2,500 for the purchase of a vehicle and $40,000 in alimony in gross. The trial court also ordered the father to pay the mother $600 a month in periodic alimony. The trial court awarded the father approximately 81.8% of the parties' net worth and awarded the mother approximately 18.2%. The trial court divorced the parties on the ground of incompatibility and did not assign fault to either party for the breakdown of the marriage.
Although the parties presented minimal evidence regarding the existence and value of their marital assets, the testimony given at the final hearing necessitates the reversal of the trial court's judgment as it relates to the division of property and the award of alimony. Given the length of the parties' marriage, the parties' future prospects, and the value and type of the marital property, we find the division of the marital assets to be inequitable. See Courtright v.Courtright, supra. Accordingly, we reverse the trial court's judgment as it relates to these issues and remand the cause for the trial court to enter a judgment fashioning an equitable property division and alimony award.
The mother further contends on appeal that the trial court erred by awarding custody of the children to the father because, she argues, evidence presented at the final hearing demonstrated that the interests of the children would not be best served by being placed in the custody of the father.
 "When the trial court makes an initial custody determination, neither party is entitled to a presumption in his or her favor, and the `best interest of the child' standard will generally apply. Nye v. Nye, 785 So.2d 1147
(Ala.Civ.App. 2000); see also Ex parte Byars, 794 So.2d 345 (Ala. 2001). In making an initial award of custody based on the best interests of the children, a trial court may consider factors such as the `"characteristics of those seeking custody, including age, character, stability, mental and physical health . . . [and] the interpersonal relationship between each child and each parent."' Graham v. Graham, 640 So.2d 963, 964
(Ala.Civ.App. 1994) (quoting Ex parte Devine, 398 So.2d 686, 696-97 (Ala. 1981)). . . . Other factors the trial court may consider in making a custody determination include `the sex and age of the [children], as well as each parent's ability to provide for the [children's] educational, emotional, material, moral, and social needs.' Tims v. Tims, 519 So.2d 558, 559 (Ala.Civ.App. 1987). The overall focus of the trial court's decision is the best interests and welfare of the children."
Steed v. Steed, 877 So.2d 602, 604
(Ala.Civ.App. 2003).
The evidence presented in this case revealed that both the father and the mother have a history of drug abuse. The trial court was presented with conflicting evidence regarding the parties' continued use of illegal drugs. Both parties denied using illegal drugs at the time of the final hearing.
The father presented evidence from which the trial court could have concluded that the mother was unable to provide the *Page 941 
children with a stable home environment. It is undisputed that, during the course of the divorce proceedings, the mother changed residences several times. At the time of the final hearing, the mother was living with a friend and her two children. The mother expressed no intention at the final hearing to move out of her friend's home in the near future. The trial court also considered conflicting evidence regarding the condition in which the mother left the marital home before the trial court awarded the father temporary custody of the children.
The evidence presented to the trial court demonstrates the importance of the ore tenus presumption on appeal. As noted by our supreme court in Ex parte R.T.S., 771 So.2d 475
(Ala. 2000),
 "[a]lthough it is difficult enough for a trial court to determine what custody arrangement would be in a child's best interests, that court is far better situated than an appellate court to make the credibility determinations that are necessary to any custody ruling. Neither the Court of Civil Appeals nor this Court may reweigh the evidence and substitute its judgment for that of the trial court. The trial court must be allowed to be the trial court; otherwise, we (appellate court judges and justices) risk going beyond the familiar surroundings of our appellate jurisdiction and into an area with which we are unfamiliar. . . ."
771 So.2d at 476-77.
The trial court concluded, based on the evidence presented by the parties, that it would be in the best interests of the children to be placed in the custody of the father. Given the ore tenus presumption on appeal and the evidence presented to the trial court, the trial court's judgment awarding custody of the children to the father is due to be affirmed.
The mother also contends on appeal that the trial court erred in failing to award her an attorney fee. Our review of the record on appeal reveals that the mother presented no evidence to the trial court in support of her request for an award of an attorney fee. Although the mother refers in her reply brief to an affidavit filed by the first attorney who represented the mother in the divorce proceedings, the record on appeal contains no such affidavit. The mother attempts to cure the deficiency by attaching a copy of her attorney's affidavit and a bill detailing the time the attorney spent on the case to her appellate brief as an appendix.
An appellate court "is limited to a review of the record alone, that is, it can consider only the evidence that was before the trial court when it made its ruling." Cowen v. M.S.Enters., Inc., 642 So.2d 453, 454 (Ala. 1994) (citingKing v. Garrett, 613 So.2d 1283 (Ala. 1993); andMoody v. Hinton, 603 So.2d 912 (Ala. 1992)). Stated another way, this court is restricted in its review to the evidence and the arguments considered by the trial court.Boykin v. Drake, 699 So.2d 233 (Ala.Civ.App. 1997). "The record on appeal cannot be supplemented or enlarged by the attachment of an appendix to an appellant's brief." Goreev. Shirley, 765 So.2d 661, 662 (Ala.Civ.App. 2000). Therefore, we will only consider the evidence contained in the record on appeal, and we will not consider the additional evidence attached by the mother to her brief on appeal.
It is well settled that the award of an attorney fee in a divorce action is a matter that rests within the sound discretion of the trial court. Walls v. Walls,860 So.2d 352 (Ala.Civ.App. 2003); Slater v. Slater,587 So.2d 376 (Ala.Civ.App. 1991); and Holmes v. Holmes,487 So.2d 950 (Ala.Civ.App. 1986). Without evidence properly *Page 942 
before us regarding the attorney fees incurred by the mother during the litigation of the divorce, we cannot say that the trial court exceeded its discretion by denying the mother's request for an attorney fee. Therefore, we affirm as to this issue.
The mother's request for an attorney fee on appeal is granted in the amount of $1,500.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.