BRYAN, Judge.
Michael D. Lockridge (“the husband”) appeals from a judgment entered by the Etowah Circuit Court (“the trial court”) that refused to grant him an absolute divorce from Karla D. Lockridge (“the wife”) and that failed to modify certain aspects of a legal-separation judgment that had been entered by the trial court on behalf of the husband and the wife.

Procedural History

The record indicates that the parties were married in February 2001 and that they separated in September 2008. The parties were the parents of one child, a son, who was born in March 2000. On October 3, 2008, the wife filed a complaint for a divorce alleging irreconcilable differences and incompatibility of temperament as grounds for the divorce. She requested, among other relief, that the parties be ordered to provide a college education for the son. The trial court entered a status quo pendente lite order on October 7, 2008, that ordered the parties, among other things, to continue paying fixed monthly expenses in the same manner as they had been paid before the divorce action was filed.
On November 7, 2008, the husband filed an answer to the wife’s complaint and stated that he did not desire a divorce; however, he also filed a counterclaim that requested, among other relief, a division of the marital property and debts.
On March 23, 2009, the wife filed an amended complaint seeking a legal separation from the husband in accordance with § 30-2-40, Ala.Code 1975. The wife alleged that she had had a liver transplant in 2005 and that she had to take expensive “anti-rejection” medication so that her body did not reject the transplanted liver. The wife further alleged that the cost of this medication was completely covered by the husband’s employer’s insurance provider, that she was unemployed, and that she had not been able to find a health-insurance policy that would cover the cost of the anti-rejection medication that she needed.
On March 26, 2009, the trial court entered an order requiring the husband to *150 pay the wife child support in the amount of $164 a week; ordered the husband to continue to pay the mortgage on the marital residence, the wife’s automobile-loan payment, and the utility bills; and ordered the wife to pay for “food and incidentals.” On April 6, 2009, the husband objected to the wife’s request for a legal separation and requested an absolute divorce.
The trial court conducted an ore tenus hearing on May 5, 2009. At that hearing, the wife stated that the sole reason she wanted a legal separation rather than an absolute divorce was because she wanted to keep her health-insurance coverage under the plan provided by the husband’s employer. The husband maintained that he wanted a divorce and not a legal separation. The husband acknowledged that, due to the wife’s August 2005 liver transplant, the wife had to take certain medication for the rest of her life to make sure that her body did not reject the transplanted liver. The wife stated that the husband’s employer-provided health insurance paid between $5,000 and $6,000 a month on her behalf for her prescription medication and that she would need that medication for the rest of her life. The wife stated that she had researched the approximate cost of obtaining health insurance considering her medical history, and she testified that the lowest monthly health-insurance plan that she qualified for cost $600 a month.
The wife, who was 36 years old at that time, testified that she had a college degree in computer-information systems and that, before the parties married, she had worked as a computer programmer for two years, earning approximately $35,000 a year, until she was laid off. The son was born shortly thereafter, and the wife did not return to work after giving birth to the son, except as a substitute teacher at the son’s school for a couple of days in 2007. The wife stated that the husband had never asked her to go back to work.
The husband, who was 61 years old and in good health, worked as a comptroller at Ventura Foods, LLC, and he “brought home” $4,200 in income a month. The record indicated that the husband’s gross monthly income was approximately $6,300. The husband paid $300 a month for health insurance through his employer. The husband stated that, considering the state of the economy, he was not guaranteed a job at Ventura Foods much longer.
The husband stated that he wanted joint custody of the son, but he agreed that the wife should have primary physical custody of the son.
The husband testified that the marital residence was in his name and his former’s wife name and that he had been awarded the marital residence in a prior divorce action. According to the husband, the monthly mortgage on the marital residence was approximately $706. The husband stated that he had been living with his mother since the parties separated and that her home was approximately one-quarter of a mile from the marital residence. The husband asked to be awarded the marital residence, and the wife stated that she and the son would have to move in with her grandmother approximately one hour away from the marital residence if she was not permitted to remain in the marital residence. The husband admitted that the marital residence needed repairs. The husband stated that the wife had never paid any household bills during the marriage.
The husband stated that he had been paying $288 a month for the wife’s 2006 Toyota Camry automobile. The husband owned outright a 2002 Buick LeSabre automobile. As of October 2008, the husband had two certificates of deposit (“CDs”) that totaled $16,000. Only one of *151 the CDs was held jointly with the wife, and he admitted that he had removed the wife’s name from the CD. The husband stated that he had a 401(k) retirement account through his employer and that the balance of that account was $66,000.
The husband stated that he paid $180 a week in alimony to his former wife. According to the husband, he had not fallen behind on any of his bills since the parties separated. He stated that all the marital debts were in his name and that his monthly expenses were approximately equal to his monthly income.
On May 13, 2009, the trial court entered a “decree of legal separation” that found that the requirements of § 30-2-40(a)(l), (2), and (3), Ala.Code 1975, had been met. The parties were awarded joint legal custody of the son, and the wife was awarded primary physical custody of the son subject to the husband’s visitations rights. The husband was allowed visitation with the son “at all reasonable times and places as agreed to by the parties,” and the wife was “directed to be liberal in establishing visitation for the [husband].... ” The husband was ordered to continue to provide health insurance for the son, and he was required to pay all noneovered medical expenses incurred on behalf of the son. The husband was ordered to continue to pay $164 a week to the wife as child support.
The wife was awarded exclusive and temporary use and possession of the marital residence, and the husband was ordered to pay the mortgage, taxes, and insurance on the marital residence. The husband was also required to pay for a new roof for the marital residence and to pay for repairs to the marital residence caused by water damage. The wife was awarded her 2006 Toyota Camry, and the husband was ordered to pay the monthly car payment on the Camry and the wife’s car insurance. The husband was awarded his 2002 Buick LeSabre.
The husband was awarded approximately 19 items of furniture, appliances, and other personal property from the marital residence, and the wife was awarded all the other household goods, furnishings and appliances in the marital residence. The trial court ordered the parties to continue to pay all household bills as they had been paid' during the pendency of the proceedings. Finally, the trial court’s legal-separation judgment stated:
“This matter shall be reviewed in one year upon the motion of either party for the purpose of determining the employment status of the [wife] and her health condition. The [c]ourt finds that the [wife] is well educated and able to sustain gainful employment. The [wife] shall actively pursue gainful employment immediately and the [wife’]s attorney is ordered to make a quarterly reporting regarding the same for the [c]ourt’s consideration.”
The trial court certified the judgment as a final judgment pursuant to Rule 54(b), Ala. R. Civ. P. The husband filed a post-judgment motion pursuant to Rule 59(a) and (e), Ala. R. Civ. P., which was subsequently denied. The husband did not appeal the legal-separation judgment.
Approximately one year later, on May 10, 2010, the husband filed a “Motion for Review of Entry of Legal Separation,” and he requested that the trial court grant him an absolute divorce from the wife because, he alleged, the wife had obtained employment and he had lost his job and his ability to maintain the wife’s health-insurance coverage. The husband requested that the trial court modify his child-support obligation and the division of marital property and debts, and he requested that the trial court make the wife responsible for her household bills.
*152 The trial court conducted an ore tenus hearing on May 26, 2010. The wife stated that she had obtained employment in August 2009 at a company called IBEC in Hokes Bluff earning $10 an hour, or approximately $707 every two weeks. The wife introduced evidence indicating that her gross wages totaled approximately $948 every two weeks, or approximately $2,054 a month.[1] She stated that she had searched for more lucrative employment but that most of the employers that she had found did not provide health insurance. The wife’s employer provided health-insurance coverage, with no restrictions on preexisting conditions, for $200 a month.[2] That cost included health-insurance coverage for the son.
The wife stated that her prescription-medication costs were approximately $2,000 a month but that her employer’s health-insurance provider would pay only 80% of that cost, or approximately $1,600, each month. The wife stated that she had to pay the cost of the medication up front and that she would be reimbursed by her employer’s health-insurance provider. The wife stated that she had approximately $6,000 in savings but that she needed assistance from the husband in order to pay the monthly uncovered cost of her medication.
The husband again asked the trial court to enter an absolute divorce. The husband stated that he was still living with his mother and that he wanted title to and possession of the marital residence. The husband also asked that the wife be responsible for paying her own monthly expenses.
The husband stated that he had been discharged from his job at Ventura Foods on March 9, 2010, for lack of performance. The husband stated that his employer had wanted him to spend more time at his job even though, the husband stated, he was already spending 12 hours a day at work, including his commute, which was about 1 hour each way. The husband received four months of salary, or approximately $25,200, in severance pay from his employer in April 2010. The husband stated that his mother did not charge him anything for rent or utilities.
The husband stated that he had not been successful at finding other employment and that he did not expect to be able to find employment that was commensurate in pay with his job at Ventura Foods. The husband stated that he had maintained health insurance for the wife and the son through COBRA, which cost $503 a month. The husband stated that he was eligible for COBRA health insurance for 18 months from the date he lost his job. The husband requested a modification of his child-support obligation based on the loss of his job and the mother’s having obtained a job since the last judgment was entered.
The husband stated that he could begin drawing approximately $1,600 a month in Social Security benefits but that, if he waited until he was 66 years old, he could draw approximately $2,300 a month. The husband stated that he had approximately $100,000 in a 401(k) account, $6,400 in an individual retirement account, and approximately $3,000 in a money-market account. *153 The husband stated that he was relying on the funds in his retirement accounts for his retirement and that he could not afford to deplete those funds because he would have no way to support himself upon retirement. There was no indication at the May 2010 trial that the husband had removed any funds from his retirement accounts to cover his monthly expenses. The husband stated that he had spent approximately $11,000 from two CDs to repair the marital residence.
The wife, who was 38 years old in May 2010, said that she thought that she could pay the utility bills at the marital residence that the husband had been paying but that she could not also pay the mortgage on the marital residence. The wife stated that there were 13 payments remaining on her car loan and that it would be difficult for her to make the car payment and the utility payments. The husband estimated that he had paid between $700 and $800 a month in utility bills for the wife. The husband’s other monthly expenses included $711 a month for the mortgage on the marital residence, $780 month in alimony to his former wife, $711 a month in child support, and $288 a month for the wife’s vehicle.
The husband stated that, because he was unemployed, he had been caring for the son before and after school each weekday and that the wife picked up the son from his home between 5:00 p.m. and 6:00 p.m. each weekday. The husband said that the son occasionally did not come to visit him on weekends. The wife stated that she did not mind if the husband had weekend visitation with the son, so long as the son was “okay” with it. The wife stated that she understood that it was her job to make sure the son attended visitation with the husband, and she also stated that it was her understanding that the husband’s visitation was left to her discretion. She stated that it would not bother her if the trial court set up a specific visitation schedule. However, the wife stated that she thought it was fair to let her have weekends with the son because the husband would be caring for the child during the day each weekday while the child was not in school.
The husband stated that he did not have a will and that he had made no other provision to provide for the education of the son.
On June 22, 2010, the trial court entered a judgment on the husband’s request for a review of the legal separation. The trial court found that the wife had obtained employment and health-insurance coverage since the last hearing but that, unlike the husband’s health-insurance coverage, the wife’s health-insurance provider covered only 80% of the monthly cost of the wife’s medication; that the husband had been discharged from his job at Ventura Foods and that he had been paying to maintain health-insurance coverage for himself, the wife, and the son through COBRA; that, considering the husband’s retirement accounts and his eligibility to begin drawing Social Security benefits, the husband had sufficient assets to continue to pay child support and the mortgage on the marital residence; and that the husband had no will and that he had made “no provision for the education of the son.” Based on those findings of fact, the trial court made the following modifications to the May 2009 legal-separation judgment, without entering an absolute divorce:
“A. The [wife], beginning in July, 2010 shall be responsible for all utility payments at the marital home. The [wife] shall also be responsible for the insurance on her automobile.
“B. The [husband] is ordered to place $10,000.00 that is in his 401-K plan in a money market account that shall be *154 in the name of the ... son to be used for his college education. The [wife] shall act as the trustee of said monies.
“C. The [husband] is to have a deed prepared and delivered to [his former] wife that transfers her interest in the marital residence to the [husband].
“D. All other terms and provisions of the legal separation shall remain in effect.”
The husband subsequently appealed the decision of the trial court to this court.

Issues

The husband presents five issues for this court’s consideration: (1) whether the trial court erred in refusing to grant his request for an absolute divorce; (2) whether the trial court erred by inequitably dividing the parties’ assets, debts, and marital expenses in the June 2010 judgment; (3) whether the trial court erred by refusing to modify his child-support obligation; (4) whether the trial court erred by requiring him to place $10,000 from his 401(k) account in a trust for the son’s college education; and (5) whether the trial court erred in refusing to set a specific visitation schedule.

Standard, of Review

The trial court entered its judgment after hearing ore tenus evidence. “When a trial court ‘makes findings of fact based on evidence presented ore tenus, an appellate court will presume that the trial court’s judgment based on those findings is correct, and it will reverse that judgment only if it is found to be plainly and palpably wrong.’” C.P. v. W.M., 837 So.2d 860, 864 (Ala.Civ.App.2002) (quoting Ex parte Byars, 794 So.2d 345, 347 (Ala.2001)).

Discussion

First, the husband argues that the trial court erred in entering a judgment of legal separation instead of an absolute divorce. The husband contends that because the wife had obtained employment and health-insurance coverage by the time of the May 2010 hearing, and because he had lost his job and his ability to maintain health-insurance coverage for the wife beyond what COBRA would allow, there was no longer any justification for a legal separation rather than an absolute divorce.
“Legal separations in Alabama are governed by § 30-2-40, Ala.Code 1975. That section of the Alabama Code was adopted by the Alabama Legislature with an effective date of January 1,1999. Pursuant to that statute, a legal separation is a ‘court determination of the rights and responsibilities of a husband and wife arising out of the marital relationship,’ and a ‘legal separation does not terminate the marital status of the parties.’ See § 30-2-40(b), Ala.Code 1975.”
D.L.J. v. B.R.J., 887 So.2d 242, 246 (Ala.Civ.App.2003).
Before January 1, 1999, Alabama recognized a divorce a mensa et thoro, also known as a divorce from bed and board, which was the common-law predecessor to a legal separation. Id. See also Drummond v. Drummond, 466 So.2d 974, 976 (Ala.Civ.App.1985) (“Divorce a mensa et thoro, a divorce from bed and board, is a legal separation allowing the marriage to continue as to everything not withdrawn by the decree.”). In D.L.J., this court considered Alabama precedent concerning a divorce a mensa et thoro in deciding, in the affirmative, whether the trial court had jurisdiction to modify judgments of legal separation under § 30-2-40. Id. at 247. However, this court rejected the argument that § 30-2-40 codified all preexisting common law that related to a divorce a mensa et thoro. Id. at 248.
Before the enactment of § 30-2-40, which became effective on January 1, 1999, *155 this court had held “that when a trial court has before it a request for a divorce from bed and board and a divorce from the bonds of matrimony, the court can exercise its discretion and determine which type of divorce is best for the parties under the facts of their case.” Drummond, 466 So.2d at 976. Section 30-2-40(c), Ala.Code 1975, provides that “[i]f a party files a complaint for a decree of legal separation rather than a decree of dissolution of marriage, the court may grant the legal separation.” (Emphasis added.) Accordingly, the enactment of § 30-2-40(e) is a codification of the common-law rule that the decision whether to grant a legal separation or an absolute divorce lies within the sound discretion of the trial court. “[T]his court will not reverse a part of a trial court’s judgment that is left to its discretion unless it is shown that the trial court exceeded its discretion or that the judgment is plainly or palpably wrong.” B.R.F. v. A.V.F., 70 So.3d 412, 419 (Ala.Civ.App.2011) (citing Romano v. Romano, 703 So.2d 374, 375 (Ala.Civ.App.1997)).
The husband argues that the trial court had no legal basis for continuing the legal separation because the wife could elect to continue health-insurance coverage through COBRA whether the parties were divorced or operating under the legal separation. See, generally, 29 U.S.C. § 1162 and § 1163. It was undisputed that, under the facts as they were presented to the trial court, even if the parties remained only legally separated, the wife’s (and the husband’s) health-insurance coverage through COBRA would end 18 months after the husband’s employment with Ventu-ra Foods was terminated.[3]
At trial in May 2009, the wife unequivocally stated that the only reason she desired a legal separation was in order to maintain health insurance. At that time she was unemployed and did not have access to health insurance through an employer. At trial in May 2010, the wife did not indicate that she thought a legal separation was still necessary; she only stated that, if she was required to utilize her employer’s health-insurance coverage, she would need assistance from the husband in financing the monthly cost of her medication. The wife stated that she had enough savings so that she did not need the husband to pay the up-front cost of $2,000 a month for her medication. There was some indication during the May 2010 trial that the parties thought that it would be more economical for the husband to continue to pay health insurance for the family through COBRA rather than pay for single coverage for himself through COBRA and also pay the wife’s $400-a-month medication expense. We understand that such reasoning may have been the trial court’s justification for continuing the legal separation; however, there is no indication that this arrangement — the husband’s paying for family coverage through COBRA while that coverage was available — could not have been utilized if the parties were divorced rather than operating under a legal separation.
Based on the evidence presented, we agree with the husband that, at the time of the May 2010 trial, there no longer existed any basis to support the legal separation and that the trial court exceeded its discretion by failing to enter a judgment dissolving the marriage of the parties. Accordingly, we reverse the judgment insofar it *156 failed to enter an absolute judgment of divorce, and we remand the cause with instructions to the trial court to enter a judgment divorcing the parties.
The husband also argues that the trial court erred in dividing the parties’ assets, debts, and monthly expenses in the June 2010 judgment. We pretermit discussion of this issue in light of the fact that we are reversing the June 2010 judgment continuing the legal separation with instructions to the trial court to enter a final judgment of divorce. Pursuant to § 30-2-40(d), Ala.Code 1975, neither the trial court nor the parties are “bound by[ ] the provisions of the legal separation relating to alimony or a property settlement upon a final dissolution of the marriage.” See also D.L.J. v. B.R.J., 887 So.2d at 248. Accordingly, on remand, the trial court is free to exercise its discretion in crafting a divorce judgment that equitably divides the marital estate.
The husband also argues that the trial court erred in failing to modify his child-support obligation based on the evidence of the change in circumstances since the entry of the May 2009 legal-separation judgment. The husband contends that, in light of the wife’s monthly gross income of $2,054, the increased cost of health insurance, and the loss of his job, his child-support obligation was due to be modified.
“An award of child support may be modified only upon proof of a material change of circumstances that is substantial and continuing. Browning v. Browning, 626 So.2d 649 (Ala.Civ.App.1993). The parent seeking the modification bears the burden of proof. Cunningham v. Cunningham, 641 So.2d 807 (Ala.Civ.App.1994). Whether circumstances justifying modification of support exist is a matter within the trial court’s discretion. Id. We will not disturb the trial court’s decision on appeal unless there is a showing that the trial court abused that discretion or that the judgment is plainly and palpably wrong. Id.; Douglass v. Douglass, 669 So.2d 928, 930 (Ala.Civ.App.1995).”
Romano v. Romano, 703 So.2d 374, 375 (Ala.Civ.App.1997).
Concerning child support, the trial court’s judgment stated:
“The [husband] testified that he has some $100,000.00 to $120,000.00 in a 401-K account, along with a portion of the severance package of some $28,000.00 that was paid to him in April of this year. He is also eligible to begin drawing some $1,600.00 per month in Social Security pension benefits. The [husband] has sufficient assets to continue to pay child support....”
The husband, citing Rule 32(B)(1) and (2)(a), Ala. R. Jud. Admin., argues that the trial court erred by considering his retirement moneys still held in savings in determining that his child-support obligation was not due to be modified. The application of the child-support guidelines in Rule 32 is founded on the determination of the parents’ gross income, not their assets. See Rule 32(B)(1) (defining “income” for purposes of the child-support guidelines as the “actual gross income of a parent....”). Rule 32(B)(2) provides the definition of “gross income,” as follows:
“(a) ‘Gross income’ includes income from any source, and includes, but is not limited to, salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, Social Security benefits, workers’ compensation benefits, unemployment-insurance benefits, disability-insurance benefits, gifts, prizes, and preexisting periodic alimony.
“(b) ‘Gross income’ does not include child support received for other children *157 or benefits received from means-tested public-assistance programs, including, but not limited to, Temporary Assistance for Needy Families, Supplemental Security Income, food stamps, and general assistance.”
In the present case, there was no indication at the time of trial that the husband was drawing on his retirement accounts as a form of income or that the husband was retired and was planning to use his retirement accounts as his sole source of income for his own support. To the contrary, the record indicates that the husband had lost his job and that he was searching for employment. Under these particular circumstances, we agree with the husband that the trial court erred in considering the money in his retirement accounts in determining that his child-support obligation was not due to be modified.[4]
We further agree with the husband that there is no indication in the trial court’s judgment that it considered the wife’s increased gross income or the husband’s increased health-insurance costs, see Rule 32(C)(2), Ala. R. Jud. Admin., in determining the husband’s child-support obligation. Accordingly, we reverse that part of the trial court’s judgment that refused to modify the husband’s child-support obligation, and we remand the cause to the trial court for calculation of the husband’s child-support obligation pursuant to Rule 32.[5]
The husband also argues that the trial court exceeded its discretion by requiring him to place $10,000 from his 401 (k) account in a trust for the son’s college education. The husband argues that this part of the judgment can be classified only as an award of postminority educational support pursuant to Ex parte Bayliss, 550 So.2d 986 (Ala.1989), and that an award of postminority educational support on behalf of the 10-year-old son was premature, especially in light of the fact that there was no evidence to support an award of postminority educational support. We agree.
The trial court, in its judgment, found that the husband did not have a will and that he had not otherwise made provision for the college education of the son. Although this court has held that a trial court may require a parent to obtain life insurance to insure that a minor child will be supported in the event of the supporting parent’s death, see Jordan v. Jordan, 688 So.2d 839, 842 (Ala.Civ.App.1997), the trial court went further and specifically ordered the husband to place $10,000 in trust for the child for his future college education.[6] That part of the judgment requiring the husband to set aside $10,000 for the benefit of the son can undoubtedly be labeled as “support” for the son. However, we have held that “[cjhild support determinations involve the parent’s present ability to meet the child’s present *158 needs and are not subject to speculation regarding future ability or need.” Butts v. Butts, 600 So.2d 1038, 1041 (Ala.Civ.App.1992) (citing Morrison v. Kirkland, 567 So.2d 363 (Ala.Civ.App.1990)).
In Butts, we held that an award of a definite amount of postminority educational support was premature when “the children [wejre not yet of college age and there was no evidence presented regarding the anticipated future college expenses or the possibility of ‘undue hardship’ on the husband or the wife.” 600 So.2d at 1042 (citing Thrasher v. Wilburn, 574 So.2d 839, 841 (Ala.Civ.App.1990)). Similarly, in Martin v. Martin, 624 So.2d 192, 193 (Ala.Civ.App.1993), this court reversed an order requiring the husband to pay the postmi-nority educational expenses of his three children, who were ages 11, 13, and 16 at the time of trial, when
“[a] review of the testimony reveal[ed] that no evidence was presented regarding the anticipated expenses connected with a college education for any of the children, or whether the husband would be able to contribute to the cost of such an education when each child was ready to attend college. Further, the record [wa]s devoid of any evidence of the children’s grades or their willingness to attend college.”
As we did in Butts and Martin, we conclude that the record is devoid of any evidence sufficient to support an award of postminority educational support at this time. Accordingly, that part of the judgment that required the husband to “place $10,000.00 that is in his 401-K plan in a money market account ... in the name of the ... son to be used for his college education” is reversed, and, on remand, the trial court is instructed to vacate that portion of its judgment.
Finally, the husband contends that the trial court erred in failing to set a specific visitation schedule on his behalf. The May 2009 legal-separation judgment set forth the visitation parameters for the husband as follows: “The [husband] shall have visitation with the [son] at all reasonable times and places as agreed by the parties.”
In Pratt v. Pratt, 56 So.3d 638, 644 (Ala.Civ.App.2010), this court held that “[t]he propriety of [a visitation] judgment depends on whether the noncustodial parent has a sufficient, specified visitation schedule to rely upon, independent of the custodial parent’s discretion.” We also noted that “[t]his court ... has affirmed awards of unspecified visitation based on the agreement of the parties when the trial court also provides that, in the event of disagreement, ‘standard visitation’ or some other specified visitation would be imposed.” Id. Although the trial court’s judgment also directed the wife to be liberal in establishing visitation with the husband, we agree that the trial court erroneously failed to provide for some form of specific visitation for the husband in the event the parties could not agree on the husband’s visitation. Accordingly, we reverse the trial court’s judgment insofar as it failed to set forth a specific visitation schedule for the husband, and we remand the cause with instructions to the trial court to set forth a “sufficient,’ specified visitation schedule [for the husband] to rely upon, independent of the [wife]’s discretion.” Id.

Conclusion

The judgment of the trial court is reversed, and the cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. We calculated the wife’s monthly gross income by multiplying her gross biweekly income ($948) by the number of pay periods in 1 year (26) and dividing that number ($24,-648) by 12.

. Apparently, the wife’s employer's health-insurance provider notified her the week before trial that there would no longer be any restrictions on her coverage, which suggests that, from August 2009 until shortly before trial in May 2010, there were some restrictions.

. It is possible that, if the parties divorced, the wife would be entitled to an additional 18 months of COBRA coverage. See 29 U.S.C. § 1162(2)(A)(ii) (special rule for multiple qualifying events). However, because neither party presented the trial court with this argument, we will not consider it in determining whether the trial court exceeded its discretion by failing to grant the husband an absolute divorce.

. We note that there was no indication in the trial court's judgment that the trial court intended to deviate from the application of the child-support guidelines pursuant to Rule 32(A)(ii), Ala. R. Jud. Admin.

. We note that the trial court, in its discretion, may deviate from the application of the Rule 32 child-support guidelines if it concludes that application of the guidelines would be unjust or inappropriate. See Rule 32(A)(ii), Ala. R. Jud. Admin, (setting forth the procedure for deviating from the child-support guidelines).

.If the judgment had required the husband to set aside money as a guaranty that the child would be supported in the event of the husband's death, this court may have decided the issue differently. But, because the money was specifically designated for the son's college education, we must conclude that such an award is an award of postminority educational support.