PITTMAN, Judge,
dissenting.
In Ex parte Byars, 794 So.2d 345, 347 (Ala.2001), the Alabama Supreme Court outlined the standard of review for appellate courts regarding an initial child-custody determination:
*690 “Alabama law gives neither parent priority in an initial custody determination. Ex parte Couch, 521 So.2d 987 (Ala.1988); The controlling consideration in such a case is the best interest of the child. Id. In any case in which the court makes findings of fact based on evidence presented ore tenus, an appellate court will presume that the trial court’s judgment based on those findings is correct, and it will reverse that judgment only if it is found to be plainly and palpably wrong. Ex parte Perkins, 646 So.2d 46 (Ala.1994). The presumption of correctness accorded the trial court’s judgment entered after the court has heard evidence presented ore tenus is especially strong in a child-custody case. Id.”
In the present case, the Calhoun Juvenile Court (“the juvenile court”) heard evidence from N.P.W. (“the father”) indicating, among other things, that, after he had moved to South Carolina, he had continued to visit and communicate with T.L.W. (“the child”) and that he and the child were bonded but that, in June 2012, after already having made it increasingly difficult for the father to maintain emotional contact with the child, T.N.S.R. (“the mother”) had disappeared and completely cut off all contact with the father. The father testified further that he had located the mother in Colorado six weeks later and that she had refused to return his telephone calls and e-mails and that, after he had located her, she and her husband had continued to deny him and his family contact with the child. Both the father and C.O. Grinstead, the pastor at Trinity Baptist Church who testified that he had known the father and his family for all of the father’s life, testified that, once visitation had been recommenced, the child had been hostile toward the father at the beginning of each visit with the father.
The juvenile court heard competing evidence from the parties, including assertions by the mother that the father had physically abused her and the father’s outright denial of those assertions. The father testified that the mother had refused to allow him to see the child for one of the weekend visits that had been scheduled by the .juvenile court. Additionally, at the trial in the present case, the trial judge attempted to interview the child. The child refused, however, to speak with the trial judge, even when asked about subjects such as Christmas or his favorite flavor of ice cream. The juvenile court was in a better position to determine that the mother’s influence of the child was what had caused him to be withdrawn at the trial. See Byars, supra.
With regard to the mother’s argument that the child’s relationship with his half siblings supports her argument that the juvenile court erred in removing the child from her care, the father testified that he felt that it was important for the child to continue to have a relationship with his half siblings and that it was not his intention to separate them. Because I believe that the juvenile court was in the best position to weigh the evidence presented; that, in accordance with the ore tenus standard of review, the juvenile court’s findings of fact are supported by the evidence and should not be disturbed on appeal; and that the judgment based on those facts is not plainly and palpably wrong, I would affirm the juvenile court’s judgment. Therefore, I respectfully dissent.